JIM AMEN, AKA JIM ALLEN; VINCE BEDELL, AKA VINCE EVANS; CLARK CREECH, AKA C.W. DENNIS; DAVID MAXWELL, AKA J.D. McCORMICK; BETH MOREY, AKA RACHEL TRUMAN, AKA JAN GILBERT, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 19990

November 28, 1990                     801 P.2d 1354

---

750

[Rehearing denied March 12, 1991]

*Morgan D. Harris,* Public Defender, Clark County, for Appellant Jim Amen.

*Nathaniel Reed,* Las Vegas, for Appellant Vince Bedell.

*Leslie Mark Stovall,* Las Vegas, for Appellant Clark Creech.

*Lee Elizabeth McMahon,* Las Vegas, for Appellant David Maxwell.

*Lovell & Potter,* Las Vegas, for Appellant Beth Morey.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Carolyn Ellsworth,* Deputy District Attorney, and *David B. Barker,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

The primary issues in this appeal are whether statutory evidentiary requirements for corroboration of false pretense charges are

sufficient to support individual convictions, whether a misdemeanor crime is a lesser included offense in the more serious felony false pretense offense, and whether severance should have been ordered in the trial of the defendants. Having concluded that none of the issues has merit, we affirm.

## The Facts

Appellants are either co-owners or salespersons involved in an extended telemarketing scam which operated from Henderson, Nevada, under the name of J & W Marketing (J & W). Conveniently, the victims of the scam were small out-of-state businessmen. In order to secure novelty advertising orders (mugs, pens, baseball caps or key tags), J & W called "winners" in a self-generated advertising lottery. The victims were offered "guaranteed" cash promotions. Relying on these so-called cash bonuses, customers placed orders ranging between $239 and $279.

The victims who testified never saw the promised cashier's checks, even after many phone calls and letters of complaint. Instead, they were eventually told that names would be placed in a drawing. Some nineteen victims testified in the month-long trial. One defendant was acquitted.[1]

In operating the scam, both salespersons and owners used special phone names. Victims received letters from J & W's Nancy Walker, a nonexistent person, confirming cash awards. Salespersons "pitching" customers from standardized scripts were monitored by tapes which were periodically reviewed by J & W. Salespersons and owners would alternate in calling customers, some of whom were duped more than once. Several out-of-state victims made contemporaneous tape recordings which were admitted into evidence. These tapes reveal that victims were told: "You'll never ever regret this," or "When I'll get back to you I'll have some good news."

## Discussion

The primary issue before us concerns the requisite evidentiary

---

[1] It was noted during oral argument that the State did not have corroborating evidence against this defendant in the form of a tape recording. A tape recording offered into evidence combined with evidence considered as a whole may satisfy a requirement of corroboration. *See* State v. Holmes, 476 P.2d 878, 881 (Ariz.Ct.App. 1970), *cert. denied,* 403 U.S. 936 (1971). NRS 179.500, which requires court authorization for any intercepted wire or oral communication, is not implicated since the tapes in question were recorded out of state.

requirements under NRS 175.261,[2] the corroboration statute regarding false pretense charges. We are persuaded that when a tight-knit group is engaged in a fraudulent enterprise, corroboration derived from unconnected victims defrauded in a similar, consistent pattern may constitute "corroborating circumstances" on interrelated counts as contemplated by the statute.

Under the facts of this case, it is highly unlikely that victims in different states with no mutual business dealings could have prefabricated stories for trial. On the other hand, the record reflects a concerted effort by appellants, through deceptive and repetitive tactics, to induce customers to place orders. Concerns for reliability underlying the policy behind the corroboration statute applicable to false pretense cases are satisfied by the testimony of unrelated victims caught in a similar pattern of deceit. Independent evidence need only "tend[] to connect" the defendant to the commission of the illegal offense. LaPena v. State, 96 Nev. 43, 47, 604 P.2d 811, 813 (1980); People v. Fujita, 43 Cal.App.3d 454, 470, 117 Cal.Rptr. 757, 766 (1974), cert. denied, 421 U.S. 964 (1975) (jury needs to be reasonably satisfied that the complaining witness is telling the truth).

Cases cited by appellants are inapposite. In Sheriff v. Gordon, 96 Nev. 205, 606 P.2d 533 (1980), both witnesses required corroboration independent of each other because of statutes applicable to each.[3] Moreover, unlike the instant case, the witnesses were husband and wife and involved together in the meeting upon which the criminal charges were based. Id. at 206-07, 606 P.2d at 533. Understandably, the Gordon court would not allow the witnesses to corroborate each other's testimony. Appellants' reliance on State v. Sorensen, 617 P.2d 333 (Utah 1980), is also misplaced as the two victims worked closely together and not independently as in the instant case.

---

[2]NRS 175.261 states in pertinent part:

Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person, to a written instrument, or having obtained from any person any money, personal property, or valuable thing, the defendant shall not be convicted if the false pretense shall have been expressed in language, unaccompanied by a false token or writing, unless . . . the pretense be proved by the testimony of two witnesses, or that of one witness and corroborating circumstances . . . .

[3]One witness' testimony required corroboration under the evidentiary requirements of NRS 175.291 for accomplice testimony; the other required corroboration under NRS 175.301 concerning testimony by a person claiming to be enticed for prostitution. See, Gordon, 96 Nev. at 206, 606 P.2d at 534.

Next, we are called upon to decide whether NRS 598.080,[4] conditioning a prize upon a purchase, a misdemeanor, is a lesser included offense of NRS 205.380,[5] obtaining money under false pretenses, a felony. Appellants testified that customers were not notified that they had in fact won a prize, but were simply told that they were *eligible* for a cash bonus through a drawing. Taking appellants' testimony at face value, it is apparent that they placed themselves outside the purview of the misdemeanor statute by claiming not to have informed the victims that they had won a prize. Moreover, it is clear that the misdemeanor crime is not a lesser included offense of the felony crime because the former applies specifically to advertising activity and the latter does not. Additionally, the former requires notification of winning a prize and the latter does not. *See* McKinnon v. State, 96 Nev. 821, 618 P.2d 1222 (1980).

False pretense is a "representation of some fact or circumstance which is not true and is calculated to mislead . . . [and] may consist of any act, word, symbol or token calculated and intended to deceive." Buckner v. State, 95 Nev. 117, 119, 590 P.2d 628, 630 (1979); Bright v. Sheriff, 90 Nev. 168, 170, 521 P.2d 371, 373 (1974). Unlike the *mala prohibita* aspect of NRS 598.080, obtaining money by false pretense is a crime of specific intent to separate a victim from his property by means of a misrepresentation. There is ample evidence in the record that appellants' conduct falls under the more serious proscriptions of NRS 205.380.

---

[4]NRS 598.080 states:

    1. It is unlawful to notify any person by any means, as a part of an advertising plan or scheme, that he has won a prize and that as a condition of receiving such prize he must purchase or rent any item.
    2. A violation of the provisions of subsection 1 shall be a misdemeanor.

[5]The pre-1989 version of NRS 205.380 provides in pertinent part:

    1. Every person who knowingly and designedly by any false pretense obtains from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing, including rent or the labor of another person not his employee, with intent to cheat or defraud the other person, is a cheat, and, unless otherwise prescribed by law, shall be punished:
    (a) If the value of the thing or labor so fraudulently obtained was $100 or more, by imprisonment in the state prison for not less than 1 year nor more than 10 years, or by a fine of not more than $10,000, or by both fine and imprisonment, and be sentenced to restore the property so fraudulently obtained, if it can be done, or tender payment for rent or labor.

Additionally, in the former version of NRS 205.380 under which appellants were charged, a $100 loss determined the financial threshold between a misdemeanor and a felony.[6] The national scope and dollar losses sustained by J & W victims fall comfortably within the conduct that the legislature intended to deter by the imposition of a felony.

Finally, we conclude that the trial court's denial of appellants' motion to sever was proper. *See* McDowell v. State, 103 Nev. 527, 530, 746 P.2d 149, 150-51 (1987). NRS 173.135 permits two or more defendants to be charged in a single indictment if they have participated in the "same series of acts or transactions constituting an offense or offenses," even if the indictment charges different offenses. Although business responsibility varied among appellants, there is abundant evidence in the record proving that appellants worked in unison in a single enterprise with an overall plan. The record establishes that victim contacts displayed a striking congruity. For example, at least three different victims testified that they had received identical "Nancy Walker" letters. Several victims also testified that they had received identical certificates of "eligibility" for a cash prize after they had been "guaranteed" a cash bonus in a prior phone call.

NRS 174.165 provides that the district court may sever a joint trial "if it appears that a defendant . . . is prejudiced" by the joinder. We are persuaded that no substantial showing of prejudice to appellants exists. Evidence of a charge against one appellant could have been admissible in a related charge against another appellant to show intent or a common scheme of operation. McDowell v. State, 103 Nev. 527, 530, 746 P.2d 149, 151 (1987); United States v. Woods, 484 F.2d 127, 135 (4th Cir. 1973), *cert. denied,* 415 U.S. 979 (1974). We are also convinced that evidence against one defendant was not disproportionate in regard to another, thereby creating the potential for an unfair "overlapping" effect. United States v. Clayton, 450 F.2d 16, 19 (1st Cir. 1971), *cert. denied,* 405 U.S. 975 (1972). Nor was there an issue suggesting that the jury would not have heard admissions of prior convictions or other "unsavory activities" in a separate trial. Cross v. United States, 335 F.2d 987, 990 (D.C.Cir. 1964). In addition, we conclude that a strong nexus exists between appellants' respective transactions.

---

[6]The Nevada Legislature's 1989 amendment to NRS 205.380(1)(a) changed the "value of the thing or labor so fraudulently obtained" to $250 or more.

Allegations of "competing defenses" raised by appellants because some were employees and others employers do not persuade us that appellants were prejudiced by the court's refusal to sever. Inconsistent defenses must be antagonistic to the point that they are mutually exclusive. McDowell v. State, 103 Nev. 527, 530, 746 P.2d 149, 151 (1987). This the appellants failed to prove. Different defenses are simply a part of the adversarial process when defendants are tried together.

We note further that appellants did not demonstrate that the jury was in fact confused. McDowell v. State, 103 Nev. 527, 530, 746 P.2d 149, 151 (1987). Exhibits were clearly marked and identified. The trial court's instructions on the corroboration necessary for individualized determinations of guilt properly stated the law of corroboration in false pretense cases.

The decision to sever is left to the discretion of the trial court. *See* Schaffer v. United States, 362 U.S. 511, 516, *reh'g denied,* 363 U.S. 858 (1960). The decision to join cases will not be reversed absent an abuse of discretion. Lovell v. State, 92 Nev. 128, 132, 546 P.2d 1301, 1303 (1976). Appellants have failed to carry the heavy burden of showing that the district court abused its discretion.

We have considered other claimed errors and conclude that they are without merit. Accordingly, the convictions are affirmed.