DANIEL DELANEY JONES, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 24720

June 27, 1995                                     899 P.2d 544

*Posin & Posin*, Las Vegas, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Rex Bell*, District Attorney, and *Rita F. Brookins*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Rose, J.:

### FACTS

In the early morning hours of August 15, 1992, appellant Daniel Delaney Jones (Jones) and four male companions drove to the apartment of Steven M., ostensibly looking for a party. Upon arrival, these five individuals confronted Steven M. at the front door to his apartment. One of these individuals, Robert Morales, told Steven M. that he had lost his keys in Steven M.'s apartment when he was there earlier that evening drinking beer and smoking marijuana. Another companion, John Flanigan, brandished a pistol. Frightened by these events, Steven M. slammed the door and retreated to his bathroom to hide.

Steven M.'s front door was knocked open, and Jones and his companions entered the apartment. One of these companions, Gregory Turner (Turner), followed Steven M. to the bathroom and kicked the door down. Then, Turner pointed a pistol at Steven M. and demanded his marijuana. Steven M. retrieved some marijuana from a bathroom cabinet and gave it to Turner. Next, Turner held a gun to Steven M.'s back and walked him into the kitchen where Steven M. was made to kneel on the floor as Jones and the others were ransacking Steven M.'s bedroom, presumably looking for more drugs.

While Steven M. was being held in the kitchen area, Turner returned to the bedroom and ordered Steven M.'s houseguest, Jenny P., to disrobe. She began to comply, but started to pull her pants back up when Turner left the room. Jones then told her,

"Did [Turner] tell you to do that? Did he tell you to do that?" Jenny P. then pulled her pants back down. Turner returned and ordered her to a closet where he sexually assaulted her while holding a gun to her head. After relieving the victims of their money and personal objects, Jones and his companions left the apartment together.

Steven M. and Jenny P. reported the night's events to the police. As a result, Jones and Turner were arrested and charged with three counts of first degree kidnapping with the use of a deadly weapon, three counts of coercion with the use of a deadly weapon, two counts of robbery with the use of a deadly weapon, and burglary. In addition, Turner was charged with sexual assault with the use of a deadly weapon.

A six-day jury trial commenced on February 2, 1993. The jury convicted Jones of one count of first degree kidnapping, three counts of coercion with the use of a deadly weapon, one count of robbery with the use of a deadly weapon, and burglary.

At sentencing, Jones moved the district court for an order of acquittal on the kidnapping conviction based on an insufficiency of the evidence. The district court granted that motion and sentenced Jones to the Nevada State Prison for his convictions on coercion, robbery, and burglary. In addition, Jones' sentences for robbery and coercion were enhanced by equal consecutive sentences for possessing a deadly weapon during the commission of a crime.

## DISCUSSION

### Penalty Enhancement

NRS 193.165(1) provides, in pertinent part:

> [A]ny person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime.

This statute demonstrates the legislature's concern regarding the increased use of deadly weapons in the commission of crimes and its belief that such proscription will serve to deter persons from using weapons during the perpetration of certain crimes, in the hope that the possibility of death and injury will be reduced. Anderson v. State, 95 Nev. 625, 630, 600 P.2d 241, 244 (1979).

In the instant case, Jones' sentence for robbery and three counts of coercion were enhanced by equal consecutive sentences for possession of a deadly weapon during the commission of

these crimes. Jones, however, contends that the penalty enhancements were improper because he never possessed a deadly weapon. Conversely, the State argues that Jones constructively possessed a weapon by aiding and abetting the actual user in the unlawful use of a weapon.

In *Anderson,* this court held that:

> the participation of a defendant not actually in possession of the weapon by aiding and abetting the actual user in the unlawful use of the weapon, makes the former equally subject to the added penalty inflicted upon defendants who commit crimes through the use of deadly weapons.

*Id.* at 629, 600 P.2d at 243. Further, this court defined the requirements necessary to subject a defendant, who aides and abets the user of a deadly weapon, to an enhanced penalty:

> [T]he possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has . . . the ability to exercise control over the firearm.

*Id.* at 630, 600 P.2d at 244. In addition, we explained that:

> When one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties, or . . . the unarmed assailant has knowledge of the use of the gun and by his actual presence participates in the robbery, the unarmed offender benefits from the use of the other robber's weapon, adopting derivatively its lethal potential.

*Id.* (citing People v. Bush, 123 Cal. Rptr. 576, 582 (Ct. App. 1975)).

At trial, there was testimony that John Flanigan brandished a pistol at Steven M. before Jones and his four companions knocked Steven M.'s apartment door open. There was also testimony that Jones was present when Turner, with a pistol in his hand, ordered Jenny P. to disrobe. Thus, it is clear that Jones had knowledge that his companions possessed firearms. Moreover, while a companion of Jones controlled Steven M., holding him at bay with a pistol, Jones rummaged through Steven M.'s bedroom searching for drugs. Jones thereby benefitted from the weapon, adopting derivatively its lethal potential. Furthermore, following the completion of the crimes at Steven M.'s apartment, Jones exited with those same armed companions. We conclude that these actions permitted the jury to find the requisite knowledge and control necessary for constructive possession of a weapon.

While Jones cites Walters v. State, 106 Nev. 45, 786 P.2d 1202

(1990), for authority that he was not in constructive possession of the weapons, we find this argument unpersuasive. In *Walters,* we found that the possession of a deadly weapon by the co-defendant alone would not establish Walters' constructive possession or control of the weapon. *Id.* at 49, 786 P.2d at 1204. This case is factually different from *Walters,* especially in that Jones used the weapons brandished by others to accomplish the crimes for which he was convicted.

*Severance*

On November 5, 1992, Jones moved the district court for an order severing his trial from the trial of his co-defendant, Turner. Jones argued that severance should be granted or he would suffer guilt by association and that the jury would not be able to compartmentalize the evidence against Jones as opposed to the evidence against Turner.

On December 23, 1992, the district court, in denying that motion, said:

> Well, gentlemen, I don't see any legal reason to sever. I can certainly see the strategy of the reasons, but that's not my concern, and I don't intend to make two trials out of one just for the accommodation of strategy, and we don't have the judicial time to do that, so we are going to set this for trial.

We have held that "[t]he decision to sever is left to the discretion of the trial court." Amen v. State, 106 Nev. 749, 756, 801 P.2d 1354, 1359 (1990); *see also* Schaffer v. United States, 362 U.S. 511, 516 (1960). Moreover, it is well settled that where persons have been jointly indicted they should be tried jointly, absent compelling reasons to the contrary. United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980); United States v. Silla, 555 F.2d 703, 707 (9th Cir. 1977).

The general rule favoring joinder has evolved for a specific reason—there is a substantial public interest in joint trials of persons charged together because of the judicial economy involved. In United States v. Brady, 579 F.2d 1121, 1128 (9th Cir.), *cert. denied,* 439 U.S. 1074 (1978), the court stated:

> we must be guided by our general rule that joint trials of persons charged with committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon

citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.

Ultimately, however, the question is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants. United States v. Kaplan, 554 F.2d 958 (9th Cir. 1977); United States v. Campanale, 518 F.2d 352 (9th Cir. 1975). While there are situations in which inconsistent defenses may support a motion for severance, the doctrine is a very limited one. United States v. Haldeman, 559 F.2d 31, 71 (D.C. Cir. 1976). Under the *Haldeman* standard, a defendant moving for severance must show that:

> "the defendants [have] conflicting and irreconcilable defenses and there is danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

*Id.* (quoting Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966)).

The United States Supreme Court has recently held that mutually antagonistic defenses are not prejudicial per se. Zafiro v. United States, 506 U.S. 534, 113 S. Ct. 933 (1993). The Court refused to adopt a bright-line rule mandating severance merely because defendants had conflicting defenses. *Id.* at 938. *Zafiro* discusses a number of situations in which severance might be required and acknowledges that courts may find joinder prejudicial in other situations as well. *Id.*

In the instant case, we conclude that joinder did not prejudice Jones. Both Jones and Turner admitted to being at Steven M.'s apartment on the evening of August 15, 1992. Moreover, both testified that they did not commit any of the charged offenses and did not observe the other commit any of the charged offenses. Thus, Jones' and Turner's testimony did not conflict. Therefore, the district court properly denied Jones' motion for severance. Furthermore, it is obvious from the record that Jones was convicted because four eyewitnesses testified to his involvement in the crimes that took place at Steven M.'s apartment, not because he was tried together with Turner.

*Coercion*

Jones offers only three short sentences in asserting that the district court erred in failing to suppress a statement made by Jones to the police. Jones contends that these statements were the product of coercion by the police. Because Jones does not cite to

any legal authority for this proposition, and because he does not make any reference to the record to support his contention, only limited consideration will be dedicated to this contention.

This court has consistently held that it will not consider assignments of error that are not supported by relevant legal authority. Sheriff v. Gleave, 104 Nev. 496, 498, 761 P.2d 416, 418 (1988); Cunningham v. State, 94 Nev. 128, 130, 575 P.2d 936, 938 (1978); McKinney v. Sheriff, 93 Nev. 70, 560 P.2d 151 (1977); Williams v. State, 88 Nev. 164, 494 P.2d 960 (1972).

Secondly, the record refutes Jones' contention that statements that he made to the police were the product of coercion. Officer Garness testified that he gave Jones his *Miranda* warnings and asked him if he understood his rights. Jones responded affirmatively. Moreover, Officer Chavez testified that he was present when Jones was given his *Miranda* warnings and that he also asked Jones if he understood his rights and, again, Jones responded affirmatively.

Subsequently, Jones told Officer Chavez that his only involvement in the events at Steven M.'s apartment was that he followed Turner around when Turner had the gun in his hand. Jones also told Officer Chavez that Turner used the gun to penetrate Jenny P.'s vagina. Further, the record reflects that Officer Chavez told Jones that he would like to take his statement when they got to the jail. Jones declined and requested to see an attorney. Consequently, Officer Chavez ceased all questioning.

In view of the foregoing evidence, we conclude that Jones' statements to the police were voluntary.

## CONCLUSION

There is substantial evidence in the record to support the jury's verdicts convicting Jones of coercion, robbery, and burglary. Moreover, there is sufficient evidence to support the jury's finding that Jones constructively possessed a deadly weapon during the commission of these crimes. Further, Jones and Turner were properly tried together. Lastly, we conclude that Jones' statements to the police were voluntary. Accordingly, the judgment of the district court is affirmed.

STEFFEN, C. J., YOUNG, SPRINGER and SHEARING, JJ., concur.