OPINION
 

 Per Curiam:
 

 Appellant Calvin Miles Marshall was tried and convicted along with his codefendant, Raymond Edward Currington, of first-degree murder, robbery, and conspiracy to commit robbery. Marshall contends that the district court erred in refusing to sever his trial from Currington’s. We conclude that the district court did not err and affirm its judgment.
 

 FACTS
 

 Early in the morning on June 25, 1999, David Kloehn was stabbed to death while working as a bartender at Mr. O’s Corner Bar in Reno. He received numerous wounds, including to both eyes. Marshall and Currington were the last patrons seen in the bar before Kloehn’s body was discovered a little after 4:00 a.m. The next day police searched Currington’s pickup truck and a motel room occupied by him and Marshall. The police found incriminating evidence, including blood stains in the truck matching the victim’s blood and racks of slot tokens in the motel room taken from Mr. O’s Corner Bar. These basic facts are not disputed.
 

 Before trial, Marshall and Currington opposed the State’s motion to join the two defendants for trial, arguing that their defenses were antagonistic. The district court ordered the joinder. Marshall and Currington later moved to sever their trials, again arguing antagonistic defenses, but the court denied the motion.
 

 In addition to the evidence noted above, at trial the State presented testimony by three jailhouse informants. Two testified that while they were incarcerated in the Washoe County Jail with Currington, he told them that he had robbed and murdered Kloehn. The third testified that while he was incarcerated with Marshall at the jail, Marshall admitted to committing the murder. The State also presented evidence that when arrested Marshall had cuts on both his index fingers, swelling under his eyes, and a scratch on his face. Currington had a wound on the back of his head when arrested. There was also evidence that Marshall was intoxicated on the night of the crimes.
 

 Marshall did not testify. His entire defense case consisted of the testimony of another jailhouse informant. This witness testified that he had been incarcerated with Currington at the jail and that Currington admitted to cutting the bartender’s throat.
 

 
 *645
 
 The only evidence presented by Currington in his defense was his own testimony. He testified that he left the bar before the murder occurred because Marshall said he intended to rob the bartender. Currington’s testimony was inconsistent in regard to whether he believed Marshall intended to kill the bartender. Currington claimed that he drove away from the bar and then returned about ten minutes later and picked Marshall up. Marshall had some blood on him and was carrying a plastic bag, and the next day Marshall gave Currington a split of the money from the robbery. Under cross-examination by Marshall’s counsel, Currington conceded that he associated with white supremacists and told a fellow jail inmate he killed Kloehn because the bartender was Jewish. (The record does not indicate that Kloehn was Jewish or any particular ethnicity.) But Currington said that various claims he made to fellow inmates about the crimes were false.
 

 In closing argument, Marshall’s counsel asserted that her client was so intoxicated on the night in question that he was passed out in the pickup truck when the crimes occurred. She attributed the cuts on Marshall’s hands to a job injury and argued that Currington committed the murder motivated by racist hatred. Currington’s counsel argued in turn that the forensic evidence showed that Marshall was the murderer: for example, the victim’s blood was found on the passenger side of the pickup truck where Marshall sat, and the wounds on his hands and swelling on his face were consistent with a struggle with the victim. Counsel argued that Currington lied to fellow inmates about committing the murder in order to bolster his image in the jail.
 

 The jury found both Marshall and Currington guilty of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and conspiracy to commit robbery. The district court sentenced them each to two consecutive terms of life in prison without the possibility of parole for the murder and to consecutive prison terms for the robbery and the conspiracy. They were also ordered to pay $8,800 in restitution.
 

 DISCUSSION
 

 Marshall contends that the district court erred in refusing to sever his trial from Currington’s because each argued that the other was solely responsible for the murder. He relies primarily on a standard cited by this court in several opinions, most recently in
 
 Rowland
 
 v.
 
 State.
 

 [1]
 

 Rowland
 
 states that “defenses must be antagonistic to the point that they are ‘mutually exclusive’ before they are to be considered prejudicial,” requiring severance.
 
 [2]
 
 
 *646
 
 Defenses are mutually exclusive when ‘ ‘ ‘the core of the codefen-dant’s defense is so irreconcilable with the core of [the defendant’s] own defense that the acceptance of the codefendant’s theory by the jury precludes acquittal of the defendant.’ ’ ’
 
 [3]
 

 To the extent that this language suggests that prejudice requiring severance is presumed whenever acceptance of one defendant’s defense theory logically compels rejection of another defendant’s theory, it is too broadly stated. As we have explained elsewhere, “[w]hile there are situations in which inconsistent defenses may support a motion for severance, the doctrine is a very limited one.”
 
 [4]
 
 A defendant seeking severance must show that the codefendants have “conflicting and irreconcilable defenses and there is danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.”
 
 [5]
 
 We take this opportunity to further clarify this issue.
 

 The decisive factor in any severance analysis remains prejudice to the defendant. NRS 174.165(1) provides in relevant part: “If it appears that a defendant ... is
 
 prejudiced
 
 by a joinder ... of defendants ... for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.”
 
 [6]
 
 Nevertheless, prejudice to the defendant is not the only relevant factor: a court must consider not only the possible prejudice to the defendant but also the possible prejudice to the State resulting from expensive, duplicative trials.
 
 [7]
 
 Joinder promotes judicial economy and efficiency as well as consistent verdicts and is preferred as long as it does not compromise a defendant’s right to a fair trial.
 
 [8]
 
 Despite the concern for efficiency and consistency, the district court has “a continuing duty at all stages of the trial to grant a severance if prejudice does appear.”
 
 [9]
 
 Joinder of defendants is within the discretion of the district court, and its decision will not be reversed
 
 *647
 
 absent an abuse of discretion.
 
 [10]
 
 To establish that joinder was prejudicial requires more than simply showing that severance made acquittal more likely; misjoinder requires reversal only if it has a substantial and injurious effect on the verdict.
 
 [11]
 

 The issue of antagonistic defenses is explored in
 
 Zafiro
 
 v.
 
 United States,
 

 [12]
 

 where the United States Supreme Court defined the right to trial severance under Federal Rule of Criminal Procedure 14. Rule 14 is essentially the same as NRS 174.165(1), providing that a court may grant a severance of defendants or other relief if it appears that a defendant is prejudiced by a join-der of defendants for trial.
 
 [13]
 
 The petitioners in
 
 Zafiro
 
 contended that it is prejudicial whenever “two defendants both claim they are innocent and each accuses the other of the crime.”
 
 [14]
 
 The Supreme Court rejected their contention, holding that “[m]utually antagonistic defenses are not prejudicial
 
 per se.”
 

 [15]
 

 A district court should grant a severance “only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.”
 
 [16]
 
 The petitioners in
 
 Zafiro
 
 did not “articulate any specific instances of prejudice.”
 
 [17]
 
 The Court explained that it is not prejudicial for a codefendant to introduce relevant, competent evidence that would be admissible against the defendant at a severed trial.
 
 [18]
 
 Nor had joinder allowed the prosecution to avoid its burden to prove its case beyond a reasonable doubt: “The Government argued that all four petitioners were guilty and offered sufficient evidence as to all four petitioners.”
 
 [19]
 
 The Court also declared that the district court had cured any possibility of prejudice by properly instructing the jury, among other things, that it had to consider the case against each defendant separately.
 
 [20]
 
 The Court concluded that the district court had not abused its discretion in denying the petitioners’ motions to sever.
 
 [21]
 

 
 *648
 
 Thus, antagonistic defenses are a relevant consideration but not, in themselves, sufficient grounds for concluding that joinder of defendants is prejudicial. The district courts must determine the risk of prejudice from a joint trial based on the facts of each case.
 

 Here, Marshall contends that his and Currington’s defenses were prejudicial simply because of their antagonistic nature, but such a contention is inadequate. He must show that the joint trial compromised a specific trial right or prevented the jury from making a reliable judgment regarding guilt or innocence. The defenses were indeed antagonistic, and Currington testified in an effort to exonerate himself and inculpate Marshall. Aside from this self-serving testimony, however, Currington presented no evidence against Marshall, and the State’s case was not in the least dependent on either defendant’s testimony. The prosecution argued that both defendants were guilty and presented massive evidence, including their own admissions, linking both to the murder. We conclude that the prosecution fully met its burden of proof beyond a reasonable doubt and did not use joinder unfairly to bolster a marginal case. We also see no indication that anything in this joint trial undermined the jury’s ability to render a reliable judgment as to Marshall’s guilt.
 

 CONCLUSION
 

 The fact that codefendants at a joint trial offer mutually exclusive defenses is not, in itself, sufficient to establish that joinder was prejudicial. Marshall fails to articulate any specific actual prejudice resulting from his joint trial. We conclude that the district court did not err in refusing to sever the trial, and we affirm its judgment.
 

 [1]
 

 118 Nev. 31, 39 P.3d 114 (2002).
 

 [2]
 

 Id.
 
 at 45, 39 P.3d at 122.
 

 [3]
 

 Id.
 
 at 45, 39 P.3d at 123 (quoting
 
 United States v. Throckmorton,
 
 87 F.3d 1069, 1072 (9th Cir. 1996)).
 

 [4]
 

 Jones
 
 v.
 
 State,
 
 111 Nev. 848, 854, 899 P.2d 544, 547 (1995).
 

 [5]
 

 Id.
 
 (quoting
 
 United States v. Haldeman,
 
 559 F.2d 31, 71 (D.C. Cir. 1976)) (internal quotation marks omitted).
 

 [6]
 

 Emphasis added.
 

 [7]
 

 Lisle v. State,
 
 113 Nev. 679, 688-89, 941 P.2d 459, 466 (1997),
 
 limited on other grounds by Middleton
 
 v.
 
 State,
 
 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).
 

 [8]
 

 See Brown v. State,
 
 114 Nev. 1118, 1126, 967 P.2d 1126, 1131 (1998);
 
 Jones,
 
 111 Nev. at 853-54, 899 P.2d at 547;
 
 Zafiro
 
 v.
 
 United States,
 
 506 U.S. 534, 537 (1993).
 

 [9]
 

 Neill v. State,
 
 827 P.2d 884, 890 (Okla. Crim. App. 1992).
 

 [10]
 

 Lisle,
 
 113 Nev. at 688, 941 P.2d at 466.
 

 [11]
 

 Middleton,
 
 114 Nev. at 1108, 968 P.2d at 309.
 

 [12]
 

 506 U.S. 534.
 

 [13]
 

 See id.
 
 at 538 (quoting Rule 14).
 

 [14]
 

 Id.
 
 at 540.
 

 [15]
 

 Id.
 
 at 538.
 

 [16]
 

 Id.
 
 at 539.
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 
 at 540.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 
 at 540-41. In this appeal, the State asserts that the jury received equivalent instructions but fails to include the instructions in the record.
 

 [21]
 

 Id.
 
 at 541.