An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

EUGENE ROSS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62444

**FILED**

SEP 2 3 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon, two counts of first-degree kidnapping with the use of a deadly weapon, one count of first-degree murder with the use of a deadly weapon, one count of attempted murder with the use of a deadly weapon, and one count of battery with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Eugene Ross's conviction arises from an incident where two men entered Joseph Smalley's apartment, detained and robbed its occupants, and killed Smalley. One man, wearing a red beanie, battered and attempted to kill Miasha Paton, another occupant of the apartment. When police arrived at the apartment building, they saw two men and a woman, Lisa Barksdale, fleeing from the scene. One of the men got into a car, subsequently determined to belong to Ross, and drove away. The other man fled on foot, and Barksdale was arrested at the scene. Ross's car was later found parked at another nearby apartment complex. Inside and near the car, police found significant evidence connected to Smalley's murder.

15-28815

Ross and his codefendant, Keith Coulter, were tried together and convicted. The issues on appeal are: (1) whether the district court abused its discretion by excluding his codefendant's letter and affidavit and (2) whether the district court abused its discretion by denying Ross's motion to sever.[1]

*The district court abused its discretion by excluding a letter and affidavit by codefendant Coulter*

We review a district court's exclusion of evidence for an abuse of discretion and will reverse "[a] decision [that] is arbitrary or capricious or if it exceeds the bounds of law or reason." *Coleman v. State*, 130 Nev., Adv. Op. 26, 321 P.3d 901, 908 (2014) (internal quotations omitted).

During opening arguments, Ross's attorney mentioned that Coulter sent a letter to the defense. Coulter objected. Outside the presence of the jury, Ross's attorney explained that Coulter, who was in the Clark County Detention Center on an unrelated matter at the time, had sent him a letter purportedly exonerating Ross from any involvement in Smalley's murder. Ross's attorney used the letter to prepare an affidavit for Coulter's signature and subsequently had an investigator visit Coulter at the jail, where Coulter purportedly admitted to writing the letter and thus signed the affidavit. The district court sustained Coulter's objection and refused to admit his letter and affidavit on the basis that they were not statements against Coulter's interest and were not trustworthy.

---

[1]Because each of these issues warrants the reversal and remand of Ross's convictions, we do not consider other issues raised in this appeal.

*Coulter's letter and affidavit are statements against penal interest*

Hearsay is an out-of-court "statement offered in evidence to prove the truth of the matter asserted," NRS 51.035, and is inadmissible unless it falls within an exemption or exception, NRS 51.065(1). A statement against interest is excepted from the hearsay bar and is admissible, provided that

> [a] statement which at the time of its making . . .

> (b) So far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the position of the declarant would not have made the statement unless the declarant believed it to be true is not inadmissible under the hearsay rule if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

NRS 51.345(1).

"[T]he against interest requirement is not limited to confessions of criminal responsibility. What is required is that the statement 'tend to subject' the declarant to criminal liability." *United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989) (quoting *United States v. Layton*, 720 F.2d 548, 559 (9th Cir. 1983)). In *Candoli*, an unavailable declarant made an out-of-court statement that he had the only keys to a building on the night that an arson occurred in that building. *Id.* at 508. The statement was made to an investigator who the declarant knew was investigating the fire, and the declarant had previously been arrested in relation to the fire, which indicated that the declarant realized that the statement was inculpatory and he would not have made it unless he

SUPREME COURT
OF
NEVADA

(O) 1947A

3

believed it to be true. *Id.* at 509. The *Candoli* court found that it was a statement against the declarant's penal interest, even though it was not a clear confession of criminal responsibility. *Id.*

Here, Coulter was not available as a witness because he, as a defendant, exercised his right not to testify. *See Funches v. State*, 113 Nev. 916, 922-23, 944 P.2d 775, 778-79 (1997) (holding that a defendant is considered unavailable to testify when invoking his Fifth Amendment right not to testify). While Coulter did not directly admit to any of the crimes surrounding Smalley's murder, his letter nonetheless puts him near the scene of the murder, as well as in possession of the car that was seen by police fleeing from the scene. Although his letter did not expressly state the date that the described events occurred, it does state that the letter is "in regards to your client Mr. [E]ugene [R]oss, and the current matter at hand," and that he was giving "my account of what happened." The letter also states that "on the day of the incident," Coulter borrowed Ross's car. These two statements indicate that the events described in the letter took place on the day and night of Smalley's murder.

The letter also states that Coulter and two friends then went to an apartment where there was "a lot of commotion" and he saw "Lashaye," Barksdale's middle name, run out of the apartment. It is undisputed that Barksdale was arrested after running outside of the apartment where Smalley was murdered; thus, Coulter's statement puts him near the crime scene around the time of the murder. Lastly, Coulter describes pulling the car into another apartment complex around the corner. As Ross's car was seen by police fleeing from the murder scene, and was later discovered in a nearby apartment complex, this statement

puts Coulter in possession of Ross's car near the crime scene immediately after Smalley's murder.

Coulter's affidavit also puts Coulter in possession of Ross's car on the morning of Smalley's murder. The affidavit states that on February 25, 2006, the day before Smalley's murder, Coulter borrowed Ross's car. It also states that he gave Ross the keys to the car on February 26, 2006, the morning of Smalley's murder. As Ross was arrested near Smalley's apartment while possessing his car keys on the morning of February 26, 2006, Coulter's affidavit puts him near Smalley's apartment on the morning of his murder.

Thus, Coulter's letter and affidavit place him near the crime scene on the morning of Smalley's murder and in possession of a car seen fleeing from the crime scene. This same car was later found to contain substantial evidence relating to Smalley's murder. At the time he made his statements, Coulter was in the Clark County Detention Center for an unrelated parole violation and had not yet been charged with any crimes related to Smalley's murder. Like the declarant in *Candoli*, Coulter had reason to know that the statement could be inculpatory, as he would have known the nature of the crime that Ross had been charged with, as well as the fact that Ross's car was involved. *See Candoli*, 870 F.2d at 508-09. Therefore, because Coulter's letter would tend to subject him to criminal liability for Smalley's death and a reasonable person in his position would not have made the statement unless he believed it to be true, we hold that Coulter's letter and affidavit were statements against his penal interest.[2]

---

[2]The portion of the affidavit stating that "Ross is innocent of any criminal charges," however, is not inculpatory because it does not state any facts that would connect Coulter to the charged crimes. Therefore,
*continued on next page...*

*Corroborating circumstances indicate that Coulter's letter and affidavit are trustworthy*

"[T]he statutory test for determining the admissibility of statements against penal interest under NRS 51.345 is whether the totality of the circumstances indicates the trustworthiness of the statement or corroborates the notion that the statement was not fabricated to exculpate the defendant." *Walker v. State*, 116 Nev. 670, 676, 6 P.3d 477, 480 (2000). In analyzing whether corroborating circumstances indicate that a statement against interest is trustworthy, this court has identified the following factors:

> (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

*Coleman*, 130 Nev., Adv. Op. 26, 321 P.3d at 909 (internal quotations omitted).

---

*...continued*

this sentence is not a statement against his penal interest and is not admissible under this hearsay exception. *See LaGrand v. Stewart*, 133 F.3d 1253, 1267-68 (9th Cir. 1998) ("[A] statement that includes both incriminating declarations and corollary declarations that, taken alone, are not inculpatory of the declarant, must be separated and only that portion that is actually incriminating of the declarant admitted under the exception.").

As Coulter's letter and affidavit are offered to exculpate Ross, corroborating circumstances must demonstrate their trustworthiness to establish their admissibility. *See id.* Applying *Coleman*, the following considerations suggest that the letter was not trustworthy: Coulter and Ross were close friends, the physical evidence suggests that Ross was at the crime scene, and Coulter appears to have written the letter in an attempt to exonerate Ross. However, the following considerations suggest that the letter and affidavit were trustworthy: Coulter had not been charged with any crimes related to Smalley's murder at the time that he wrote the letter and signed the affidavit, Barksdale testified that Coulter was present at the murder scene, the physical evidence corroborated Coulter's account, Coulter made the statement to an officer of the court in Ross's attorney, and Coulter later signed an affidavit repeating much of the content of the letter.

Furthermore, Coulter's affidavit carries an additional "indicia of trustworthiness because he memorialized it on paper, under oath, and presented it as truth to a court of law." *Luna v. Cambra*, 306 F.3d 954, 963 (9th Cir. 2002), *amended by* 311 F.3d 928 (2002). This indicia of trustworthiness is bolstered by the fact that Coulter's previous involvement in the criminal justice system indicates that he "knew or should have known that his . . . declaration could be used against him in a subsequent criminal trial." *Id.* at 963-64 (noting that declarant's prior involvement in the criminal justice system indicated that he did not make the statement unwittingly or without understanding the ramifications of the statement). Lastly, Ross's attorney stated that his investigator would

testify that Coulter was not offered anything in exchange for signing the affidavit.

We hold that, on balance, the *Coleman* factors in this case indicate that the letter and affidavit are trustworthy. Therefore, because Coulter's letter and affidavit were statements against his penal interest and were trustworthy, the district court abused its discretion by excluding them from evidence.

*The district court's error was not harmless*

An error is harmless if the court can determine "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967).

Ross's theory of defense was that he had not been in possession of his car when Smalley was murdered because he loaned it to Coulter. Both Coulter's letter and affidavit strongly support this theory because they state that Coulter had borrowed Ross's car the night of Smalley's murder. Because we cannot determine beyond a reasonable doubt that the district court's decision to exclude this evidence did not contribute to Ross's guilty verdict, we hold that the district court's error was not harmless. As a result, it warrants the reversal and remand of Ross's conviction.

*Significant irregular events impaired Ross's right to a fair trial*

"A criminal defendant has a fundamental right to a fair trial secured by the United States and Nevada Constitutions." *Watters v. State*, 129 Nev., Adv. Op. 94, 313 P.3d 243, 246 (2013) (internal quotations omitted). The district court has a duty to "protect the defendant's right to a fair trial" and to "provid[e] order and decorum in trial proceedings."

*Rudin v. State*, 120 Nev. 121, 140, 86 P.3d 572, 584 (2004) (internal quotations omitted); *see also United States v. Evanston*, 651 F.3d 1080, 1091 (9th Cir. 2011) (stating that the district court is to manage the trial so as to avoid causing "a significant risk of undermining the defendant's due process rights to a fair trial and impartial jury").

An occurrence that "'[is] so intrinsically harmful [to the concept of a fair trial] [constitutes a structural error that] require[s] automatic reversal . . . without regard to their effect on the outcome [of the proceeding].'" *Knipes v. State*, 124 Nev. 927, 934, 192 P.3d 1178, 1182-83 (2008) (second and fifth alterations in original) (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)); *see also Cortinas v. State*, 124 Nev. 1013, 1024, 195 P.3d 315, 322 (2008) (observing that a structural error "affect[s] the very framework within which the trial proceeds" (internal quotations omitted)). Thus, an incident or incidents that significantly undermine a defendant's right to a fair trial can be structural error and require automatic reversal of a conviction.

In the present case, there were significant incidents that potentially affected the fairness of Ross's trial. Specifically, several jury irregularities occurred, including a juror's outburst and contempt proceedings, a juror's conversation with unknown individuals at a bar about the other juror's contempt proceedings, and improper communication between Ross's mother and a juror. In the most significant of these juror-related incidents, Ross's mother approached the assembled jurors in the morning before that day's trial proceedings and borrowed a juror's cell phone. Ross's mother then placed a call to a prospective witness in the presence of multiple jurors. Finally, Ross's

mother attempted to pay the juror with one-half of a cigarette. The district court did not remove any juror for this incident.

Subsequent to the incident involving Ross's mother, the district court confiscated the juror's cell phone and held a hearing outside of the jury's presence. During the hearing, the district court answered a call placed to the confiscated cell phone. This call originated from the number that Ross's mother had called, and the district court attempted to speak with the caller. The district court then detained Ross's mother and initiated contempt proceedings against her.

While none of these irregularities may have individually impaired Ross's right to a fair trial or the jury's ability to be fair and impartial, they collectively undermined Ross's right to a fair trial to the point that they "affect[ed] the very framework within which the trial proceed[ed]." *Cortinas*, 124 Nev. at 1024, 195 P.3d at 322; *cf. Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." (internal quotations omitted)). Thus, the effect of these irregularities also requires us to reverse and remand Ross's convictions.

*The district court abused its discretion by denying Ross's motion to sever his and Coulter's trials*

We review the district court's denial of Ross's motion to sever his and Coulter's trials for an abuse of discretion. *See Chartier v. State*, 124 Nev. 760, 764, 191 P.3d 1182, 1185 (2008). Severance is appropriate "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a

reliable judgment about guilt or innocence." *Id.* at 765, 191 P.3d at 1185 (internal quotations omitted); *see also* NRS 174.165(1) (providing that severance is appropriate to prevent prejudice to a defendant or the State). One way that a joint trial may be prejudicial is when "defenses [are] antagonistic to the point that they are 'mutually exclusive.'" *Rowland v. State*, 118 Nev. 31, 45, 39 P.3d 114, 122 (2002). "Defenses are mutually exclusive when the core of the codefendant's defense is so irreconcilable with the core of [the defendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Marshall v. State*, 118 Nev. 642, 646, 56 P.3d 376, 378 (2002) (alteration in original) (internal quotations omitted).

Here, Ross and Coulter each presented defenses based on the theories that each was not at the scene of the crime and did not commit the charged acts. To support these theories, each defendant developed evidence and made arguments suggesting that the other was present.

Ross presented a theory that Coulter was the man in the red beanie who battered and attempted to kill Paton. Barksdale, Paton, and a police officer who arrived at the scene all testified that one of the perpetrators was wearing a read beanie. A red beanie was later found discarded near the crime scene containing the DNA of Coulter, as well as DNA that the forensic analyst could not exclude as coming from Ross. Ross's attorney cross-examined Barksdale to clarify her testimony that she saw Coulter, not Ross, wearing the beanie. Ross argued that Coulter had borrowed Ross's car and used Ross's gun, which had been inside the car when Coulter borrowed the car. While cross-examining one of the State's

witnesses, Ross also proffered evidence that Coulter had previously been issued a traffic citation while driving Ross's car. In addition, Ross presented a witness who identified Coulter as being near the scene of the crime. Lastly, Ross argued that the reason he had gunshot residue on his hands was because he was handed his car keys from Coulter, implying that Coulter was in the apartment when Smalley was shot.

Coulter presented a theory that Ross was the man in the red beanie. Coulter's attorney cross-examined Paton to clarify testimony that she saw Ross, and not Coulter, wearing the red beanie. In closing arguments, Coulter also argued that the possible presence of Ross's DNA on the beanie suggested that Ross, and not Coulter, was wearing it the night of Smalley's murder. Because both Ross and Coulter developed evidence and presented arguments that the other was the man in the red beanie, and that they themselves were not present at the time of the murder, their defenses were so antagonistic as to be mutually exclusive. Thus, this mutual exclusivity caused "a serious risk that [the] joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence," *Chartier*, 124 Nev. at 765, 191 P.3d at 1185 (internal quotations omitted), because the acceptance of Coulter's theory would cause a risk that it would necessarily reject Ross's theory of defense. Therefore, the district court abused its discretion by denying Ross's motion to sever the trials. As a result, reversal is warranted, and we order the district court to sever Ross's and Coulter's trials on remand.

*Conclusion*

The district court abused its discretion by excluding Coulter's letter and affidavit from evidence, and this error was not harmless. Furthermore, significant irregularities deprived Ross of a fair trial.

Lastly, the district court abused its discretion by refusing to sever Ross's and Coulter's trials. Therefore, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.[3]

_____ J.
Parraguirre

_____ , J.
Douglas

_____ , J.
Cherry

_____ , J.
Saitta

_____ , J.
Gibbons

PICKERING, J., with whom HARDESTY, C.J., agrees, concurring in part and dissenting in part:

I agree that reversal and remand for a new trial are required by the denial of severance and juror misconduct issues in this case. But I

_____

[3]On remand, we instruct the district court clerk to reassign this case to a different department.

do not agree, and therefore dissent from, the majority's holding that the district court abused its discretion in not admitting the Coulter affidavit and letter under the exception NRS 51.345(1) makes to the hearsay rule, NRS 51.035, for statements against penal interest. Appellant did not cite NRS 51.345(1) in his opening brief as a basis for admitting this evidence and, as to the letter, goes so far as to state in his reply brief, p. 5, that it was "not sought to be introduced." I therefore question whether the statement-against-penal-interest exception is properly before the court on this appeal. *See Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev., Adv. Op. 36, n.2, 302 P.3d 1108, 1112, n.2 (2013) (declining to consider arguments not raised or supported in opening brief). As a substantive matter, our review is for an abuse of discretion by the district court. *Coleman v. State*, 130 Nev., Adv. Op. 26, 321 P.3d 901, 908 (2014). Here, I would hold that the district court acted within the ambit of permissible discretion in concluding that the affidavit, authored by Coulter while in jail on a parole violation, was not against Coulter's penal interest or trustworthy but, rather, designed to exonerate Ross and distance Coulter from the events giving rise to the charges in this case.

_____Pickering_____, J.
Pickering

I concur:

_____Hardesty_____, C.J.
Hardesty

cc: Hon. Michelle Leavitt, District Judge
Dayvid J. Figler
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk