ADRIAN JACKSON, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 53632

STEVE GARCIA, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 55086

December 6, 2012                    291 P.3d 1274

---

*Philip J. Kohn*, Public Defender, and *P. David Westbrook*, Deputy Public Defender, Clark County, for Appellant Jackson.

*Karla K. Butko*, Verdi, for Appellant Garcia.

*Catherine Cortez Masto*, Attorney General, Carson City; *Steven B. Wolfson*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Nancy A. Becker*, Deputy District Attorney, Clark County, for Respondent in Docket No. 53632.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Terrence P. McCarthy*, Deputy District Attorney, Washoe County, for Respondent in Docket No. 55086.

## OPINION

By the Court, PICKERING, J.:

A single act can violate more than one criminal statute. When it does, the question arises whether the defendant can, in a single trial, be prosecuted and punished cumulatively for that act. These appeals present specific applications of that question: When the elements of both crimes are met, can a defendant who shoots and hits but fails to kill his victim be convicted of and punished for both attempted murder and battery? If he shoots and misses, can he be convicted of and punished for both attempted murder and assault?

In general, the answer to the single act/multiple punishment question depends on the statutes violated, specifically, whether they proscribe the same offense and, if so, whether they nonetheless authorize cumulative punishment. The statutes' elements define how many distinct crimes have been created. If each statute contains an element that the other does not, then the offenses are different. Battery, assault, and attempted murder each includes elements the others do not. Furthermore, Nevada's attempt statute authorizes cumulative punishment in the attempted murder/assaultive crime context. We therefore affirm the judgments of conviction in both appeals.

### I.

*Jackson v. State (Docket No. 53632)*

The facts relevant to Adrian Jackson's appeal are these: James Duffy was working the night shift at Foot Hills Tavern when Jack-

son, then just 17 years old, entered. After 20 minutes of conversation, Jackson showed Duffy a gun and said he intended to rob the bar. He then coerced Duffy into helping him try to disable the bar's security cameras.

During the robbery, Jackson forced Duffy into the restroom, ordered him into a submissive position, and asked him if he had ever taken a bullet. When Duffy said no, Jackson asked him whether he would rather be shot in the leg, the stomach, or the head. Duffy chose to be shot in the leg, which Jackson proceeded to do.

Next, Jackson asked Duffy whether he would rather be shot in the chest or the head. Duffy responded that he would rather be shot in the chest. Jackson told Duffy to lift up his head and close his eyes. Before Jackson fired, Duffy got to his feet and, despite his injured leg, grabbed the gun barrel. Jackson shot but the bullet discharged over Duffy's head. The two men struggled, Jackson fled, and Duffy called the police.

As part of their investigation, police officers contacted Mark Rodney, who managed the bar's surveillance system. Rodney advised that the security cameras had survived Jackson's bungled attempt to disable them, and offered to provide complete video for the evening. The police declined and instead asked Rodney to prepare a composite video, including only frames that showed Duffy or Jackson. The composite video omitted 12 to 15 hours of recordings from the bar's several security cameras.

An anonymous tip led to Jackson's arrest. He was charged with seven felonies, including attempted murder, assault, and battery, all with a deadly weapon; robbery, kidnapping, burglary, and discharge of a firearm in a building. When Jackson learned at trial about the discarded video, he moved for a mistrial, which the district court denied. The jury convicted Jackson on all counts. The district court sentenced Jackson to multiple consecutive sentences of life imprisonment and specific terms of years on the attempted murder, robbery, and kidnapping counts, with consecutive additional terms for the weapon enhancements, and lesser concurrent sentences for his assault, battery, and other convictions.

On appeal, Jackson argues that his convictions for assault and battery, on top of his attempted murder conviction, violate double jeopardy and are redundant to the attempted murder conviction and to each other. Jackson also argues that the State's failure to preserve the complete video footage offends due process, and that his sentence constitutes cruel and unusual punishment.[1]

---

[1]Jackson's cruel and unusual punishment argument is without merit because the sentences imposed are within the statutory limits, Jackson has not demonstrated that the applicable statutes are unconstitutional, and the sentences are

*Garcia v. State (Docket No. 55086)*

Appellant Steve Garcia and several friends got into a street fight with brothers Isaac, Ricardo, and Jose Guadalupe "Lupe" Cordero. Garcia drew a gun and fired separate shots at Isaac and Lupe, hitting both. When Garcia and his friends fled by car, Ricardo gave chase. Garcia turned and again fired the gun, hitting Ricardo in the foot. Lupe died, and Isaac suffered severe injuries.

In a single trial, Garcia was tried for and convicted of Lupe's murder, two counts of attempted murder with the use of a deadly weapon for shooting Isaac and Ricardo, battery with the use of a deadly weapon causing substantial bodily harm (Isaac), and battery with the use of a deadly weapon (Ricardo). The court sentenced Garcia to life in prison with the possibility of parole for Lupe's murder, to consecutive sentences of 192 months in prison for the two attempted murder convictions, and to lesser concurrent sentences for the aggravated battery convictions.

Garcia raises myriad issues on appeal, only one of which warrants extended discussion: that his convictions for attempted murder and aggravated battery violate double jeopardy and are impermissibly redundant.[2]

## II.

Whether conduct that violates more than one criminal statute can produce multiple convictions in a single trial is essentially a question of statutory construction, albeit statutory construction with a constitutional overlay. *See United States v. McLaughlin*, 164 F.3d 1, 7-8 (D.C. Cir. 1998). Our review is de novo as to both the statutory construction, *Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004) (whether leaving three victims at the scene of an accident constituted one offense or three presents a statutory construction question that receives de novo review), and constitutional issues involved, *Davidson v. State*, 124 Nev. 892, 896, 192 P.3d 1185, 1189 (2008) ("A claim that a conviction violates the Double Jeopardy Clause generally is subject to de novo review on ap-

---

not so grossly disproportionate to the offenses as to shock the conscience. *See Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion); *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996).

[2]Garcia also contends that: (1) the district court improperly instructed the jury, (2) the State committed misconduct during closing argument, (3) the district court improperly admitted testimony about gangs, (4) the murder sentence rested on suspect evidence resulting in cruel and unusual punishment, and (5) the evidence was insufficient to convict. After careful consideration, we conclude that these arguments lack merit. Garcia also contends that he was deprived of his right to effective assistance of counsel, an issue inappropriate for direct appeal. *Ouanbengboune v. State*, 125 Nev. 763, 768 n.1, 220 P.3d 1122, 1125 n.1 (2009).

peal."). *See Ebeling v. State*, 120 Nev. 401, 404, 91 P.3d 599, 601 (2004) (reviewing de novo a redundancy challenge to multiple convictions for an assertedly single offense).

## A.

### 1.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Nevada citizens through the Fourteenth Amendment to the United States Constitution, *Benton v. Maryland*, 395 U.S. 784, 794 (1969), and is additionally guaranteed by the Nevada Constitution, Nev. Const. art. 1, § 8. The Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). It is the third protection that is at issue in these appeals.

"In accord with principles rooted in common law and constitutional jurisprudence," the Supreme Court "presume[s] that 'where two statutory provisions proscribe the "same offen[c]e," ' a legislature does not intend to impose two punishments for that offense." *Rutledge v. United States*, 517 U.S. 292, 297 (1996) (quoting *Whalen v. United States*, 445 U.S. 684, 691-92 (1980)) (interpreting federal legislation). To determine whether two statutes penalize the "same offence," both the Supreme Court and this court look to *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Ball v. United States*, 470 U.S. 856, 861 (1985) ("This Court has consistently relied on the test of statutory construction stated in *Blockburger*[ ] to determine whether Congress intended the same conduct to be punishable under two criminal provisions."); *Estes v. State*, 122 Nev. 1123, 1143, 146 P.3d 1114, 1127 (2006) ("Nevada utilizes the *Blockburger* test to determine whether separate offenses exist for double jeopardy purposes."). The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *see Barton v. State*, 117 Nev. 686, 692, 30 P.3d 1103, 1107 (2001) ("under *Blockburger*, if the elements of one offense are entirely included within the elements of a second offense, the first offense is a lesser included offense and the Double Jeopardy

Clause prohibits a conviction for both offenses''), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006).

As *Rutledge*'s reference to "presume[d]" legislative intent suggests, the *Blockburger* test does not, by itself, decide whether multiple punishments are permissible. It determines whether the statutes violated penalize the same or several distinct offenses, and if so, whether a presumption arises against cumulative punishment. If Congress or a state legislature has clearly authorized multiple punishments for the same offense—as routinely occurs when a statute authorizes incarceration *and* a fine for a given crime—dual punishments do not offend double jeopardy, even though they are imposed for the "same offence." *See Whalen*, 445 U.S. at 688-89 (but noting that, "if a penal statute instead provided for a fine *or* a term of imprisonment upon conviction, a court could not impose both punishments without running afoul of the double jeopardy guarantee of the Constitution" (citing *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 176 (1873))). The converse also holds: If Congress or a state legislature has created mutually exclusive alternative offenses, thereby prohibiting multiple punishment for what are separate offenses under *Blockburger*, that prohibition controls. *McLaughlin*, 164 F.3d at 9 ("Just as failing *Blockburger* does not preclude punishment under multiple provisions, passing *Blockburger* does not mandate it."); *cf. Braunstein v. State*, 118 Nev. 68, 79, 40 P.3d 413, 421 (2002) (since NRS 201.230 makes "[t]he crimes of sexual assault and lewdness . . . mutually exclusive[,] . . . convictions for both based upon a single act cannot stand"). In sum, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).[3]

2.

Applying this law to these appeals, we turn to the statutes that produced the convictions Jackson and Garcia challenge.

NRS 193.330 is Nevada's attempt statute and it states:

1. An act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit

---

[3]Some suggest that the prohibition against multiple punishment is not "a freestanding constitutional prohibition implicit in the Double Jeopardy Clause," but rather, "an aspect of the Due Process Clause requirement of legislative authorization." *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 801 (1994) (Scalia, J., joined by Thomas, J., dissenting).

that crime. A person who attempts to commit a crime, unless a different penalty is prescribed by statute, shall be punished as follows:

(a) If the person is convicted of:

(1) Attempt to commit a category A felony, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 20 years.

. . . .

2. *Nothing in this section protects a person who, in an unsuccessful attempt to commit one crime, does commit another and different one, from the punishment prescribed for the crime actually committed.* A person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court in its discretion discharges the jury and directs the defendant to be tried for the crime itself.

(Emphasis added.)

NRS 200.010(1) defines "[m]urder" as the "unlawful killing of a human being . . . [w]ith malice aforethought," while NRS 200.030 deems murder a category A felony. NRS 193.165 provides an additional penalty for use of a firearm or deadly weapon. Jackson and Garcia were both convicted of attempted murder with use of a deadly weapon, a category B felony by operation of NRS 193.330(1)(a) and NRS 200.030. In addition, Jackson was convicted of assault and battery, each with a deadly weapon, and Garcia was convicted of battery with a deadly weapon causing substantial bodily harm for Isaac's shooting and battery with a deadly weapon for Ricardo's shooting.

Jackson was charged with assault under NRS 200.471(1)(a) that, as written at the time, *see infra* note 5, defined assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm," 2007 Nev. Stat., ch. 515, § 71, at 3078, a category B felony if committed with use of a deadly weapon. NRS 200.471(2)(b). Battery is "any willful and unlawful use of force or violence upon the person of another," a category B felony if a deadly weapon is used. NRS 200.481(1)(a), (2)(e).

In determining whether the Legislature has authorized multiple punishments, we look first to statutory text. NRS 193.330(2), by its terms, authorizes conviction of and punishment for attempted murder in tandem with assault and/or battery: "Nothing in this section protects a person who, in an unsuccessful attempt to commit one crime, does commit another and different one, from the punishment prescribed for the crime actually committed." Perhaps "unsuccessful attempt to commit one crime" means a failed attempt at attempt, but this seems implausible given

NRS 193.330(1), which defines attempt in terms of "[a]n act done with the intent to commit a crime, and tending *but failing* [*i.e.*, 'unsuccessful attempt'] to accomplish it." (Emphasis added.) If NRS 193.330(2) expressly authorizes punishment for both attempted murder (the "unsuccessful attempt to commit one crime") and assault and/or battery ("the crime[s] actually committed"), the double jeopardy analysis ends there: The Legislature has authorized cumulative punishment. *See Hunter*, 459 U.S. at 366. While a court may take into account the aggregation of charges in sentencing—as both district courts did here when they ran the assault and battery sentences concurrent to the attempted murder sentences—the multiple convictions and associated punishments do not offend double jeopardy.

But the parties do not argue NRS 193.330(2), so we move on to *Blockburger*, on which they focus. Under *Blockburger*, Jackson's and Garcia's multiple punishment challenges fail because "each offense contains an element not contained in the other." *Dixon*, 509 U.S. at 696; *Barton*, 117 Nev. at 692, 30 P.3d at 1107. Attempted murder requires intent to kill, malice aforethought, and failure to complete the crime of murder, none of which are elements of battery. or assault. NRS 193.330; NRS 200.010. Battery requires unlawful "use of force or violence upon the person of another," *i.e.*, physical contact, which attempted murder does not. NRS 200.481. And murder can be attempted secretly, with the intent—indeed, the hope—that the victim will never apprehend danger; assault as charged in Jackson punishes the opposite. Therefore, the statutes do not proscribe the "same offence,"[4] and the presumption against multiple punishments for the "same offence" does not arise, defeating Jackson's and Garcia's double jeopardy challenges.[5]

---

[4]Of note, Garcia's trial counsel conceded this point at sentencing: "I would love it if they actually legally merged [but] I believe there are elements that are different in the two [attempted murder and battery]."

[5]We acknowledge that the court held in *Walker v. State*, 110 Nev. 571, 574-75, 876 P.2d 646, 648 (1994), *overruled in part on other grounds by Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006), that assault with a deadly weapon is a lesser-included offense of attempted murder with the use of a deadly weapon. At that time, NRS 200.471(1)(a) defined assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." NRS 200.471(1)(a) (1994). This is no longer the definition of assault, as the statute was amended in 2001. *See* 2001 Nev. Stat., ch. 216, § 1, at 986 (amending NRS 200.471(1)(a) to define assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm"). Although the statute was amended again in 2009 to add an alternative means of committing the offense, *see* 2009 Nev. Stat., ch. 37, § 1, at 74 (amending NRS 200.471(1)(a) to provide that assault may also be committed by "[u]nlawfully attempting to use physical force against another person"), that version of the statute is not at issue here as Jackson was charged with an

## B.

Jackson and Garcia argue that their multiple convictions violate Nevada's unique redundancy doctrine, even if they do not offend double jeopardy. Specifically, they maintain that under Nevada redundancy case law, multiple convictions *factually* based on the same act or course of conduct cannot stand, even if each crime contains an element the other does not. This argument, and the cases cited in its support, are fundamentally inconsistent with *Barton*, 117 Nev. at 693, 30 P.3d at 1107, where this court, sitting en banc, rejected the fact-driven "same conduct" approach in favor of *Blockburger*'s "same elements" approach. Based on *Barton*, we reject Jackson's and Garcia's redundancy challenges.

## 1.

Like Nevada, the United States Supreme Court has vacillated on whether to pursue, in addition to *Blockburger*'s "same elements" test, a "same conduct" analysis in assessing cumulative punishment. Thus, in *Grady v. Corbin*, 495 U.S. 508 (1990), *overruled by United States v. Dixon*, 509 U.S. 688 (1993), the defendant pleaded guilty to driving under the influence, a misdemeanor traffic violation, and later faced vehicular manslaughter charges arising from the same incident. *Id.* at 511-13. The Supreme Court held that the Double Jeopardy Clause barred the second prosecution "in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 521. Shortly after *Grady*, the Court made a large exception for cases where a single transaction or occurrence supported a charge of conspiracy and related substantive offenses. *United States v. Felix*, 503 U.S. 378 (1992). Then, a mere three years after *Grady*, the Court overruled it outright, reasoning that *Grady* was "not only wrong in principle; it has already proved unstable in application." *Dixon*, 509 U.S. at 709; *id.* at 711 & n.16 (noting the multiple authorities criticizing *Grady* because it "contradicted an 'unbroken line of decisions,' contained 'less than accurate' historical analysis, and ha[d] produced 'confusion.' " (quoting *Solorio v. United States*, 483 U.S. 435, 439, 442, 450 (1987))).

In *Barton*, this court retraced the Supreme Court's path in *Grady* and *Dixon* and endorsed *Dixon*'s "same elements" approach, to the exclusion of *Grady*'s "same conduct" approach.

---

offense that was committed before that amendment. Given the 2001 amendment that applies here, the holding in *Walker* is not controlling. *Walker* also relied on *Graves v. Young*, 82 Nev. 433, 420 P.2d 618 (1966), which, as discussed *infra* at note 7, is inconsistent with and overruled by *Barton*, 117 Nev. at 694-95, 30 P.3d at 1108-09.

*Barton*, 117 Nev. at 694-95, 30 P.3d at 1108. Although *Barton* arose in the context of lesser-included-offense instructions, *id*. at 687, 30 P.3d at 1103,[6] its stated holding applies to other contexts as well, including specifically, to questions of "whether the conviction of a defendant for two offenses violates double jeopardy," "whether a jury finding of guilt on two offenses was proper," and "whether two offenses merged." *Id*. at 689-90, 30 P.3d at 1105. Indeed, the principal "same conduct" case *Barton* overrules, *Owens v. State*, 100 Nev. 286, 680 P.2d 593 (1984), is a double jeopardy/cumulative punishment case.[7] And *Barton* states its holding categorically: "To the extent that our prior case law conflicts with the adoption of the elements test, we overrule *Owens v. State* and expressly reject the same conduct approach *that has been used in various contexts*"; "[j]ust as the United States Supreme Court found [*Grady*'s] same conduct test to be unworkable . . . , we too conclude that *eliminating the use of this test* will promote mutual fairness." *Barton*, 117 Nev. at 694-95, 30 P.3d at 1108-09 (emphases added).

## 2.

The "same conduct" test that *Barton* rejects resurfaced not two years later in *Salazar v. State*, 119 Nev. 224, 70 P.3d 749 (2003), a redundancy decision on which both Jackson and Garcia rely. In *Salazar*, a three-judge panel of this court reversed a conviction under NRS 200.481(2)(e)(2) of battery with the use of a deadly weapon causing substantial bodily harm as redundant to a conviction of mayhem with a deadly weapon under NRS 200.280 and NRS 193.165. *Id*. at 228, 70 P.3d at 751-52. Factually, both con-

---

[6]Barton was convicted of second-degree murder; he claimed that, on the evidence presented, reckless driving causing substantial bodily harm was a lesser included offense and that counsel had been remiss in not requesting a lesser-included-offense instruction to that effect.

[7]In overruling *Owens*, *Barton* also overrules the cases on which *Owens* relied—*Graves v. Young*, 82 Nev. 433, 420 P.2d 618 (1966), and *Dicus v. District Court*, 97 Nev. 273, 625 P.2d 1175 (1981). In *Owens*, this court reversed a battery conviction on double jeopardy grounds, holding that, while battery is not always a lesser included offense of robbery, the two stand in that relation when factually based on the same conduct or act. *Owens*, 100 Nev. at 288-89, 680 P.2d at 595 (citing *Graves* and *Dicus*). *Graves* held that "[a]ttempted murder can be committed with or without assault" and that whether assault was a lesser included offense of attempted murder depended on the "evidence submitted at the trial, as well as . . . the language of the charge contained in the indictment." *Graves*, 82 Nev. at 438, 420 P.2d at 620-21 (quotations omitted). *Dicus* held that "[w]hether battery with the use of a deadly weapon is a lesser included offense within attempted murder depends on the facts of each case." *Dicus*, 97 Nev. at 275-76, 625 P.2d at 1177. These cases, had *Barton* not overruled them, would have directly supported Jackson's and Garcia's redundancy challenges; they involved the same statutes and the same fact-based "same conduct" analysis Jackson and Garcia urge.

victions derived from a single act: cutting the victim with a box cutter. *Id.* Citing *Blockburger* and without any textual analysis, the panel determined that the two statutes did not penalize the same offense. *Id.* at 227, 70 P.3d at 751. But no matter. Drawing on pre-*Barton* cases, *Salazar* concluded that because the battery and mayhem convictions "arise from and punish the same illegal act," *id.* at 228, 70 P.3d at 752 (citing *Skiba v. State*, 114 Nev. 612, 959 P.2d 959 (1998)), their "gravamen" is the same. *Id. Salazar* then adds that, " '[t]he Legislature never intended to permit the State to proliferate charges as to one course of conduct by adorning it with chameleonic attire,' " *id.* (quoting *Albitre v. State*, 103 Nev. 281, 284, 738 P.2d 1307, 1309 (1987)), and with this, its analysis ends: Battery conviction reversed.

One of the pre-*Barton* cases cited in *Salazar, Skiba,* involves similar facts and exhibits the same conclusory analysis as *Salazar.* Skiba slashed his victim's cheek and eye with a broken beer bottle, for which he was charged with and convicted of one count of battery "not committed with a deadly weapon [resulting in] substantial bodily harm" under NRS 200.481(2)(b) and of one count of battery "committed with the use of a deadly weapon" under NRS 200.481(2)(e). 114 Nev. at 613, 959 P.2d at 960. The court reversed the former conviction as "redundant" to the latter. *Id.* at 616, 959 P.2d at 961. As in *Salazar,* it did so without any analysis of statutory text, simply declaring the "gravamen" of both offenses to be the same and invoking *Albitre*'s "adorn[ed in] chameleonic attire" hyperbole. *Id.* at 615-16, 959 P.2d at 961.

Careful statutory analysis would have led to the same result in *Skiba* and arguably *Salazar*,[8] without resort to *Albitre*'s colorful

---

[8]Nevada is unusual in retaining the anachronistic crime of mayhem, in addition to aggravated battery, in its criminal code. Wayne R. LaFave, *Criminal Law* § 16.5(b) at 887 (5th ed. 2010) ("Only a few of the modern codes contain such a crime [mayhem], although some others define a certain variety of aggravated battery in terms that are very similar."). NRS 200.280 defines mayhem as "unlawfully depriving a human being of a member of his or her body, or disfiguring or rendering it useless" as by "cut[ting] out or disabl[ing] the tongue, put[ting] out an eye, slit[ting] the nose, ear or lip, or disabl[ing] any limb or member of another, or voluntarily, or of purpose, put[ting] out an eye." The injury must be permanent; if not, "no conviction for maiming [mayhem] shall be had, but the defendant may be convicted of assault in any degree." NRS 200.300. (NRS 200.300 has been carried forward without change from Nevada's 1911 criminal code; it was not until 1971 that the Legislature distinguished assault from battery as it does in NRS 200.471 and NRS 200.481. *See* 1971 Nev. Stat., ch. 612, §§ 1-4, at 1384-85.) Because mayhem has historically been treated as an aggravated form of battery, 3 William Blackstone, Commentaries *115, *121; Annotation, *Mayhem as Dependent on Part of Body Injured and Extent of Injury,* 16 A.L.R. 955 (1922), a fair reading of NRS 200.280 and 193.165, on the one hand, and NRS 200.481(2)(e)(2), on the other, especially given NRS 200.300, is that the Legislature authorized conviction of mayhem or battery causing substantial bodily harm, but not both.

but ultimately unhelpful "chameleonic attire" language or the discredited "same conduct" approach it camouflages. Overlooked in *Skiba* is the fact that, by its terms, NRS 200.481 made the two offenses with which Skiba was charged mutually exclusive, statutory alternatives. Thus, for Skiba to have been convicted under NRS 200.481(2)(b), the jury had to find that "the battery [was] not committed with a deadly weapon"; conversely, to convict Skiba under NRS 200.481(2)(e), the jury had to find that "the battery [was] committed with the use of a deadly weapon."[9] Under a straightforward textual analysis, Skiba's dual convictions were *substantively* infirm: Either the beer bottle was a deadly weapon or it wasn't but the State could not have it both ways.

### 3.

Consistent with *Barton*, we disapprove of *Salazar*, *Skiba*, *Albitre*, and their "redundancy" progeny to the extent that they endorse a fact-based "same conduct" test for determining the permissibility of cumulative punishment. Rather than the facts or evidence in a specific case, the proper focus is on legislative authorization, beginning with an analysis of the statutory text. If the Legislature has authorized—or interdicted—cumulative punishment, that legislative directive controls. Absent express legislative direction, the *Blockburger* test is employed. *Blockburger* licenses multiple punishment unless, analyzed in terms of their elements, one charged offense is the same or a lesser-included offense of the other. As discussed in section II.A.2, *supra*, Jackson's and Garcia's multiple convictions and punishments for attempted murder, assault, and battery are statutorily authorized and, further, do not offend *Blockburger* or *Barton*. Thus, their cumulative punishment challenges fail.[10]

---

*Cf. Braunstein v. State*, 118 Nev. 68, 78-79, 40 P.3d 413, 420-21 (2002) (explaining that language in NRS 201.230 makes "crimes of sexual assault and lewdness . . . mutually exclusive and convictions for both based upon a single act cannot stand").

[9]Although *Skiba* refers to NRS 200.481(2)(e)(1), the amendment subdividing paragraph (e) into two subparts post-dated Skiba's offense and conviction. *See* 1997 Nev. Stat., ch. 314, § 4, at 1180-81.

[10]Other jurisdictions that, like Nevada, hew to *Blockburger*'s "same elements" test have reached the same conclusion as to multiple punishment challenges involving comparable attempt and assaultive crime statutes. *E.g.*, *Com. v. Vick*, 910 N.E.2d 339, 353 (Mass. 2009); *State v. Johnson*, 739 N.W.2d 1, 5-6 (S.D. 2007); *see State v. Saiz*, 7 P.3d 1214, 1219 (Kan. 2000). Different results obtain in jurisdictions that, whether because of statutory mandate or case law, adhere to a variant of the same-conduct test *Barton* and *Dixon* disavow. *See State v. Swick*, 279 P.3d 747, 755 (N.M. 2012) (noting New Mexico's reliance on charging documents and jury instructions in assessing multiple punishment challenges); *State v. Lanier*, 950 N.E.2d 600, 603 (Ohio Ct.

In disapproving the stated reasoning in *Salazar, Skiba,* and *Albitre,* our holding is limited to the fact-based "same conduct" approach they use. Of note—and doubtless contributing to the confusion in this area—Nevada's redundancy case law has also captured "unit of prosecution" and alternative-offense challenges within its sweep, neither of which we question. Examples of "unit of prosecution" cases include *Wilson v. State,* 121 Nev. 345, 356-57, 114 P.3d 285, 293 (2005) (construing NRS 200.710(2) to authorize one conviction for the use of a minor in a sexual performance, not multiple, per-photograph convictions); *Firestone v. State,* 120 Nev. 13, 18, 83 P.3d 279, 282 (2004) (NRS 484.219(1), now NRS 484E.010, penalizes the act of leaving the scene of an accident, a single offense not dependent on the number of victims); *Ebeling v. State,* 120 Nev. 401, 404-05, 91 P.3d 599, 601-02 (2004) (NRS 201.220(1) criminalizes the act of exposing oneself and is not a per-witness offense); and *Bedard v. State,* 118 Nev. 410, 414, 48 P.3d 46, 48 (2002) (the Legislature has authorized multiple burglary convictions where several separately leased offices are broken into within a single building). While sometimes using "redundancy" language, these cases recognize that determining the appropriate unit of prosecution presents an issue "of statutory interpretation" and substantive law. *See Firestone,* 120 Nev. at 16, 83 P.3d at 281; *accord Sanabria v. United States,* 437 U.S. 54, 70 n.24 (1978); Akhil Reed Amar, *Double Jeopardy Law Made Simple,* 106 Yale L.J. 1807, 1817-18 (1997).

Also dependent on statutory text and substantive criminal law are the alternative-offense "redundancy" cases like *Crowley v. State,* 120 Nev. 30, 33-34, 83 P.3d 282, 285 (2004), and *Braunstein v. State,* 118 Nev. 68, 78-79, 40 P.3d 413, 420-21 (2002); *see* Otto Kirchheimer, *The Act, the Offense, and Double Jeopardy,* 58 Yale L.J. 513, 516-17 (1949) ("'Alternativity' refers to the mutually exclusive quality of certain offenses—the application of one logically excludes the application of another to the same factual situation."). At issue in *Crowley* and *Braunstein* were dual convictions under NRS 201.230, which by its terms makes "crimes of sexual assault and lewdness . . . mutually exclusive," meaning as a matter of statutory interpretation that the same act can yield a conviction for sexual assault or lewdness but not both. *Braunstein,* 118 Nev. at 79, 40 P.3d at 421; *Crowley,* 120 Nev. at 33-34, 83 P.3d at 285; *see also Wright v. State,* 94 Nev. 415, 418, 581 P.2d 442, 444 (1978) (Nevada's kidnapping statute, as a matter of substantive law, requires movement that increases the risk to the victim, over and above that to be expected in any robbery—essen-

App. 2011) (applying Ohio's statutory "same conduct" test). For a general discussion see 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 24.8(e) (3d ed. 2011).

tially, a sufficiency-of-the-evidence determination); *Wright v. State*, 106 Nev. 647, 650, 799 P.2d 548, 549-50 (1990) (to similar effect). This body of case law, too, is unaffected by our disapproval of the "same conduct" test.

## III.

Jackson's final argument is that the district court erroneously admitted video surveillance evidence despite the State's violation of *Leonard v. State*, 117 Nev. 53, 68, 17 P.3d 397, 407 (2001) (a defendant's due process rights may be violated if the State fails to preserve evidence and the defendant can show that the State acted in bad faith or that the defendant suffered undue prejudice).[11]

Jackson's reliance on *Leonard* is misplaced because the State could not have failed to preserve or destroyed evidence that it did not possess in the first place. As the record indicates, the police officers only collected the security footage Rodney compiled and failed to collect the omitted portions of the video. Thus, *Daniels v. State*, 114 Nev. 261, 956 P.2d 111 (1998), applies.

In *Daniels*, we explained that " 'police officers generally have no duty to collect all potential evidence from a crime scene.' " 114 Nev. at 268, 956 P.2d at 115 (quoting *State v. Ware*, 881 P.2d 679, 684 (N.M. 1994)). However this rule is not absolute and we use a two-part test to determine whether the State's failure to gather evidence caused injustice. First, we consider whether the uncollected evidence was material. *Id.* at 267, 956 P.2d at 115. Second, if the evidence was material, we must determine whether the failure to gather evidence was the result of negligence or bad faith. *Id.*

Evidence is material when there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different. *Id.* (discussing *Ware*, 881 P.2d at 685). Here, the exculpatory value of the omitted video is minimal. Jackson suggested that Duffy was complicit in the robbery and that the omitted footage might somehow prove that. This argument lacks merit because the State provided all video footage that featured Duffy and Jackson, including footage of their interaction before and during the robbery. Rodney also testified that the omitted video did not contain any relevant footage. Given that the omitted footage had no apparent exculpatory value we cannot con-

---

[11]Jackson also argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), but this argument is without merit because *Brady* only governs failure to disclose evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 55-56 (1988).

clude that the evidence affected the result of the trial, especially in light of the substantial evidence presented by the State.

Jackson also did not establish bad faith, and nothing in the record on appeal indicates bad faith. The decision to compile only parts of the surveillance recordings appeared to the district court to be the product of concern for efficiency, not bad faith. We cannot disagree with that conclusion.

Thus, the State's failure to gather the full video surveillance footage did not result in injustice and the district court did not err by denying Jackson's motion to strike the video evidence or grant a mistrial.[12]

For these reasons, we affirm the judgments of conviction.

CHERRY, C.J., and DOUGLAS, SAITTA, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[12]We acknowledge that the district court incorrectly reviewed Jackson's motions under *Leonard*. Nevertheless, this mistake was harmless because the district court considered the materiality of the evidence and the possibility of bad faith and ultimately reached the right conclusion. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) ("[i]f a judgment or order of a trial court reaches the right result, although it is based on an incorrect ground, the judgment or order will be affirmed on appeal").