An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

AMAAN GOODE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62534

**FILED**

SEP 2 9 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of attempted murder and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

The State charged appellant Amaan Goode and two codefendants, Damian Elizondo and Edgar Huerta, with one count each of conspiracy to commit murder; attempted murder with the use of a deadly weapon with the intent to promote, further, or assist a criminal gang; and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Ciro Gil-Corona, the victim alleged in all of the charges, was beaten with hammers and stabbed in the head and torso. The jury convicted Goode of attempted murder and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Goode appealed.

On appeal, Goode argues that: (1) the district court abused its discretion by refusing to excuse the entire original venire for cause, (2) the district court abused its discretion by denying Goode's motion to sever, (3)

14-32208

the district court abused its discretion by admitting evidence of gang affiliation and motive, (4) the district court abused its discretion by admitting evidence of gang members' felonious conduct to prove the gang enhancement, (5) the State presented insufficient evidence to support the convictions, (6) the district court abused its discretion by denying Goode's motion for a new trial based on inconsistent verdicts, and (7) Goode's convictions and sentences for both attempted murder and aggravated battery violate the Double Jeopardy Clause. Concluding that these arguments lack merit, we affirm.

*The district court did not abuse its discretion by refusing to excuse the entire original venire for cause*

Goode first argues that the district court improperly refused to excuse the entire original venire for cause. During a break in voir dire, several venire members overheard Elizondo speaking on his cellular phone. Elizondo used profanity, mentioned marijuana, expressed his opinion that the State was making a big deal out of the situation, and said that he was "the only one out." The district court excused all venire members who directly overheard the call and asked the remaining venire members to raise their hands if they heard anything about the call second-hand. The district court then individually questioned the venire members who raised their hands and excused those venire members who said that they could not remain impartial. One of the venire members said that the call "caused a stir" amongst the other venire members. Goode moved to excuse the entire venire for cause and the district court refused to do so.

We review a district court's decision whether to excuse potential jurors for cause for an abuse of discretion. *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005). When determining whether a district court abused its discretion, the relevant inquiry is "'whether a

prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* (quoting *Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001)).

Here, the district court excused for cause all venire members who directly overheard the call or heard about the call and could not remain impartial. Goode argues that the comment that the call "caused a stir" indicates that the entire venire was tainted and that other venire members heard about the call but did not raise their hands. However, we cannot assume that the venire members who did not raise their hands were lying. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) ("We presume that juries follow the instructions they are given . . . ."); *State v. Barnes*, 481 S.E.2d 44, 56 (N.C. 1997) ("We presume that jurors will tell the truth . . . ."). Moreover, the district court questioned the venire regarding the call and excused all venire members who could not remain impartial. In addition, any bias would have been attenuated because Elizondo, not Goode, was having the offending conversation. Given these circumstances, we conclude that the district court properly exercised its discretion by refusing to excuse the entire venire for cause. *See Weber*, 121 Nev. at 580, 119 P.3d at 125.

*The district court properly exercised its discretion by denying Goode's motion to sever*

Next, Goode argues that the district court abused its discretion by denying his motion to sever his trial from Elizondo's. We review a district court's decision not to sever a trial for an abuse of discretion. *Chartier v. State*, 124 Nev. 760, 764, 191 P.3d 1182, 1185 (2008). Severance should be granted "'only if there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury

from making a reliable judgment about guilt or innocence.'" *Id.* at 765, 191 P.3d at 1185 (quoting *Marshall v. State*, 118 Nev. 642, 647, 56 P.3d 376, 379 (2002)); *see also* NRS 174.165(1). "[A] court must consider not only the possible prejudice to the defendant but also the possible prejudice to the State resulting from expensive, duplicative trials." *Marshall*, 118 Nev. at 646, 56 P.3d at 379. Severance is not required merely because it would make "acquittal more likely," *id.* at 647, 56 P.3d at 379, or "because the evidence admissible against a co-defendant is more damaging than that admissible against the moving party." *Lisle v. State*, 113 Nev. 679, 690, 941 P.2d 459, 466 (1997), *overruled on other grounds by Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998). Rather, "misjoinder requires reversal only if it has a substantial and injurious effect on the verdict." *Marshall*, 118 Nev. at 647, 56 P.3d at 379.

Goode argues that severance was required because Elizondo admitted that he attacked Gil-Corona and that he was a member of the gang involved in this case, Varrio Grande Vista (VGV), whereas Goode made no such admissions. While the evidence against Elizondo may have been stronger, this disparity in the evidence did not entitle Goode to a separate trial. *See Lisle*, 113 Nev. at 690, 941 P.2d at 466. Moreover, Goode fails to indicate why jurors could not be expected to compartmentalize the evidence admitted against each defendant, and because much of the evidence would have been identical in separate trials, severance would have placed a significant burden on the State. *See Marshall*, 118 Nev. at 646, 56 P.3d at 379. Thus, we conclude that the district court did not abuse its discretion by denying Goode's motion to sever on this ground.

Goode further argues that Elizondo's confession unconstitutionally implicated Goode. Where a defendant is implicated by a non-testifying codefendant's confession, the defendant's right to confrontation requires the redaction of the confession to eliminate mention of the defendant's name or existence and a limiting instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Here, Elizondo's confession was redacted to remove any mention of Goode or the number of attackers, and Goode's objections to the redactions were sustained before Elizondo's confession was admitted into evidence. Accordingly, Elizondo's confession did not unconstitutionally implicate Goode, *see id.*, and admission of this confession against Elizondo did not require severance.[1]

*The district court did not abuse its discretion by admitting evidence of gang affiliation and motive*

Goode next argues that the district court abused its discretion by admitting evidence of gang affiliation and motive. We review a district court's decision to admit gang-affiliation evidence for an abuse of discretion, and will uphold such a decision if "(1) the evidence is relevant, (2) it is proven by clear and convincing evidence, and (3) its probative value is not substantially outweighed by the danger of unfair prejudice." *Butler v. State*, 120 Nev. 879, 889, 102 P.3d 71, 78 (2004).

First, Goode and his codefendants were charged with the gang enhancement, and the State presented evidence suggesting that the attack on Gil-Corona was retaliation for an earlier attack on Marco Lopez, a

_____

[1]Goode also argues that severance was required because the entire venire was tainted by Elizondo's cellular phone conversation. However, as discussed above, we conclude that the district court excused for cause all venire members who expressed bias against Goode or his codefendants. As a result, we reject this argument.

SUPREME COURT
OF
NEVADA

(O) 1947A

founding member of VGV. Thus, evidence of gang affiliation and motive was highly relevant to proving the gang enhancement. *See id.* ("This court has repeatedly held that gang-affiliation evidence may be relevant and probative when it is admitted to prove motive.").

Second, there is no reason to doubt the evidence of Goode's association with VGV members. A police officer testified that he stopped Goode with a VGV member, and Goode's own alibi was that he was at the hospital with Lopez at the time of the crime.

Third, the evidence that Goode associated with VGV members was not unduly prejudicial. Although there was significant testimony regarding VGV members' felonious conduct other than the attack on Gil-Corona, none of this testimony mentioned Goode, and because Goode was charged with the gang enhancement, any risk of unfair prejudice did not substantially outweigh the probative value of this evidence. Accordingly, the district court did not abuse its discretion by admitting this evidence. *See Butler*, 120 Nev. at 889, 102 P.3d at 78.

*Admitting evidence of VGV members' juvenile adjudications of delinquency to prove the gang enhancement was not an abuse of discretion*

Goode further argues that the district court abused its discretion by admitting evidence of VGV members' juvenile adjudications of delinquency to prove that VGV was a criminal gang.

In order to prove the gang enhancement, the State must prove, inter alia, that the gang at issue "[h]as as one of its common activities engaging in criminal activity *punishable as a felony*, other than the conduct which constitutes the primary offense." NRS 193.168(8)(c) (emphasis added). It is clear that the State need not offer felony convictions to prove this element because the statute reads "punishable," not "punished." Moreover, NRS 193.168(7) allows the State to prove the

gang enhancement using expert testimony, further indicating that the Legislature contemplated that the State could offer evidence other than adult felony convictions to prove the gang enhancement.

Goode argues that juvenile adjudications of delinquency are civil in nature and therefore cannot be used to prove the felonious activity element. Although juvenile proceedings are civil in nature, NRS 62D.010(1)(a); *State v. Javier C.*, 128 Nev. ___, ___, 289 P.3d 1194, 1197 (2012) (recognizing that juvenile proceedings and confinement resulting therefrom are civil, not criminal), this does not mean that a juvenile's conduct giving rise to a juvenile adjudication of delinquency is also civil. Rather, juvenile proceedings may be initiated due to a juvenile's acts that are designated felony criminal offenses. NRS 62B.330(2)(c); *see also In re Seven Minors*, 99 Nev. 427, 432, 664 P.2d 947, 950 (1983) (explaining that juveniles come before the juvenile courts after "committing crimes"), *disapproved of on other grounds by In re William S.*, 122 Nev. 432, 442 n.23, 132 P.3d 1015, 1021 n.23 (2006). Thus, the mere fact that juvenile adjudications of delinquency are civil in nature does not mean that they are inadmissible to prove the felonious activity element of the gang enhancement.

Finally, Goode argues that NRS 193.168(8)(c) lacks standards to guide courts in determining what evidence may be admitted to prove the felonious activity element. While we agree that NRS 193.168(8)(c) contains few if any meaningful standards, we conclude that this was the Legislature's intent, expressed unambiguously in the statute itself. Accordingly, the district court properly construed NRS 193.168(8)(c) when it concluded that evidence other than felony convictions, including juvenile adjudications of delinquency, may be admitted to prove the felonious

activity element of the gang enhancement. *State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011) (stating that this court reviews a district court's interpretation of a statute de novo and unambiguous statutory language is given its plain meaning). As a result, the district court did not abuse its discretion by admitting evidence of juvenile adjudications to prove that VGV engages in felonious conduct as a common activity. *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (reviewing a district court's decision to admit evidence for an abuse of discretion).[2]

*Sufficient evidence supports the convictions*

Next, Goode argues that the State presented insufficient evidence to support the convictions. Evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (internal quotation marks omitted).

---

[2]To the extent that we have previously suggested in dicta that the conduct used to prove the felonious activity element must also be committed in furtherance of the criminal gang, such a conclusion is unsupported by NRS 193.168(8)(c). *See Origel-Candido v. State*, 114 Nev. 378, 383, 956 P.2d 1378, 1381 (1998) ("The fact that individual members committed felony crimes *which benefitted the gang* does not lead necessarily to the conclusion that felonious action is a common denominator of the gang." (Emphasis added.)). NRS 193.168(8)(c) does not expressly impose this requirement, and because such a requirement would make the gang enhancement all but impossible to prove, we decline to infer that the Legislature intended to impose such a requirement. *See Lucero*, 127 Nev. at ___, 249 P.3d at 1228.

Goode also argues that the State presented evidence of *his* juvenile adjudications of delinquency, but this argument is unsupported by the record.

*Gil-Corona's identification of Goode*

Goode argues that the evidence was insufficient to prove that Goode stabbed Gil-Corona. On cross-examination, Goode exposed potential problems with Gil-Corona's identification of Goode as one of his attackers, but the jury was nevertheless entitled to believe Gil-Corona's testimony that Goode stabbed him. *See id.* (stating "that it is the jury's function . . . to assess the weight of the evidence and determine the credibility of witnesses"). Thus, the State presented sufficient evidence that Goode stabbed Gil-Corona. *See id.*

*Attempted murder*

"Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill." *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988). "Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is *manifested by external circumstances capable of proof.*" NRS 200.020(1) (emphasis added); *cf. Dearman v. State*, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977) (regarding murder, stating that "[i]ntent to kill . . . may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances").

Goode next argues that the evidence was insufficient to prove that he intended to kill Gil-Corona because Gil-Corona's injuries were not life-threatening. Gil-Corona testified that a sedan drove at him at full speed, he was beaten with hammers by five males, and that he was stabbed in the head and torso by Goode. Gil-Corona's injuries did not require surgery or an extended hospital stay, but given the nature of the attack, the weapons used, and the vital locations of Gil-Corona's injuries, a

reasonable jury could conclude that the non-life-threatening nature of Gil-Corona's injuries was due to his luck or his attackers' ineptitude, not the absence of intent to kill. *See* NRS 200.020(1); *Dearman*, 93 Nev. at 367, 566 P.2d at 409. Accordingly, the State presented sufficient evidence to prove that Goode intended to kill Gil-Corona. *See McNair*, 108 Nev. at 56, 825 P.2d at 573.

### *Aggravated battery*

Goode further argues that the State presented insufficient evidence to support his aggravated battery conviction. Except for challenging the sufficiency of Gil-Corona's testimony identifying Goode as the stabber, Goode does not appear to argue that the evidence was insufficient to convict him of simple battery. Rather, Goode argues that the evidence was insufficient to prove that the battery resulted in substantial bodily harm, was accomplished using a deadly weapon, or was committed in furtherance of a criminal gang.

### *Substantial bodily harm*

First, Goode argues that the State presented insufficient evidence to prove that the attack resulted in substantial bodily harm. Substantial bodily harm includes physical injury "which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ; or . . . [p]rolonged physical pain." NRS 0.060. Photographs of Gil-Corona's injuries were admitted into evidence and Gil-Corona showed the jury the scars on his torso. Gil-Corona testified that at the time of trial, he had ongoing pain in his torso, suffered multiple severe headaches each week, and may not be able to continue working in construction due to his pain. This evidence was sufficient for a rational jury to conclude that the attack caused substantial bodily harm. *See id.*; *Levi v. State*, 95 Nev. 746, 748, 602 P.2d 189, 190 (1979) (stating

that serious, permanent disfigurement "includes cosmetic disfigurement," and a jury determines whether an injury is serious or permanent); *see also McNair*, 108 Nev. at 56, 825 P.2d at 573.

*Deadly weapon*

Second, to the extent that Goode argues that the State presented insufficient evidence to prove that the attack was accomplished using a deadly weapon, we reject this argument. A deadly weapon includes an instrument "which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death." NRS 193.165(6)(b). The State presented evidence that Goode stabbed Gil-Corona in the head and torso. This evidence, combined with the evidence of Gil-Corona's injuries discussed above, was sufficient for the jury to conclude that the battery was accomplished with a deadly weapon. *See* NRS 193.165(6)(b); *McNair*, 108 Nev. at 56, 825 P.2d at 573.

*Gang enhancement*

Third, Goode argues that the State presented insufficient evidence to prove the gang enhancement. A person who commits a felony "knowingly for the benefit of, at the direction of, or in affiliation with, a criminal gang, with the specific intent to promote, further or assist the activities of the criminal gang" is subject to an additional penalty. NRS 193.168(1). A "criminal gang" is:

> any combination of persons, organized formally or informally, so constructed that the organization will continue its operation even if individual members enter or leave the organization, which:
>
> (a) Has a common name or identifying symbol;
>
> (b) Has particular conduct, status and customs indicative of it; and

> (c) Has as one of its common activities engaging in criminal activity punishable as a felony, other than the conduct which constitutes the primary offense.

NRS 193.168(8).

Goode argues that the evidence was insufficient to establish the final element of the gang enhancement, that VGV engages in felonious conduct as a common activity. *See* NRS 193.168(8)(c). This argument lacks merit. In *Origel-Candido v. State*, we concluded that a gang expert's testimony was insufficient to prove the felonious activity element of the gang enhancement. 114 Nev. 378, 382-83, 956 P.2d 1378, 1381 (1998). The gang expert in *Origel-Candido* testified that the gang in that case qualified as a criminal gang under Nevada law and that he was aware of felonies committed by gang members that benefitted the gang. *Id.* at 382, 956 P.2d at 1381. However, the gang expert "did not testify as to an approximate number of . . . gang members who committed felonies" or "that incoming members of the gang were exhorted to felonious acts by senior members." *Id.* at 383, 956 P.2d at 1381. We criticized this "conclusory testimony," explaining that "[t]he fact that individual members committed felony crimes which benefitted the gang does not lead necessarily to the conclusion that felonious action is a common denominator of the gang." *Id.* Because the gang expert's testimony failed to address whether felonious conduct was a common activity of the gang, we held that the evidence was insufficient to prove the gang enhancement beyond a reasonable doubt. *Id.* at 382-83, 956 P.2d at 1381.

Unlike the gang expert in *Origel-Candido*, the State's gang expert in this case, Detective Souder, asserted facts rather than the legal conclusion that VGV is a criminal gang. Souder testified that VGV members commonly engage in felony burglary, robbery, assault, battery,

and drug activity. He testified that when a VGV member commits a crime, other members and affiliates are expected to join him, failure to do so may result in physical retaliation, and committing crimes with VGV is a way to get into and earn respect within VGV. He testified that if a VGV member was attacked, other members would be expected to retaliate to protect and promote the gang. He testified that VGV had approximately 30 members and affiliates at the time of the attack and approximately 60 members and affiliates at the time of trial, and that a majority of VGV members engage in felonious conduct. Finally, Souder testified to specific examples of VGV members' felonious conduct.[3] Unlike the testimony in *Origel-Candido*, Souder's testimony addressed the approximate number of VGV members who committed felonies and explained that VGV members and affiliates were expected to commit crimes with and for VGV. Based on this testimony, a rational jury could find that VGV engaged in felonious conduct as a common activity. *See* NRS 193.168(8)(c); *McNair*, 108 Nev. at 56, 825 P.2d at 573.

Goode further argues that the State presented insufficient evidence that Goode was a member of VGV. However, the State is not required to prove that a defendant charged with the gang enhancement is a member, or even an affiliate, of the criminal gang. Rather, the State need only prove that a defendant committed a felony "knowingly *for the benefit of, at the direction of, or in affiliation with*, a criminal gang, with the specific intent to promote, further or assist the activities of the criminal gang." NRS 193.168(1) (emphasis added). Therefore, Goode's

---

[3]As discussed above, we are not persuaded that only adult felony convictions are admissible as examples of gang members' felonious conduct. *See* NRS 193.168(8)(c).

argument that the State presented insufficient evidence of his membership in VGV to support the gang enhancement lacks merit.

In conclusion, the State presented sufficient evidence to support Goode's convictions. *See McNair*, 108 Nev. at 56, 825 P.2d at 573.[4]

*The district court did not abuse its discretion by denying Goode's motion for a new trial based on inconsistent verdicts*

Next, Goode argues that the district court abused its discretion by denying his motion for a new trial based on inconsistent verdicts. The jury found that the battery was accomplished with a deadly weapon and in furtherance of a criminal gang, but did not find these facts with regards to attempted murder. We assume without deciding that these verdicts were inconsistent, but we nevertheless conclude that the district court did not abuse its discretion.

The mere fact that a jury returns inconsistent verdicts does not justify reversal of a conviction because inconsistent verdicts "often are a product of jury lenity." *United States v. Powell*, 469 U.S. 57, 65 (1984); *see also Bollinger v. State*, 111 Nev. 1110, 1116-17, 901 P.2d 671, 675-76 (1995) (citing *Powell*, 469 U.S. at 64-69). Where a jury returns inconsistent verdicts, review for sufficiency of the evidence protects a defendant "against jury irrationality or error." *Powell*, 469 U.S. at 67. Because Goode points only to the inconsistent verdicts as grounds for a new trial, and because the evidence was sufficient to support the convictions, we conclude that the district court did not abuse its discretion

---

[4]Because we conclude that Goode's convictions were supported by sufficient evidence, we also conclude that the district court did not abuse its discretion by refusing to advise the jury to acquit Goode. *See* NRS 175.381(1); *Milton v. State*, 111 Nev. 1487, 1493, 908 P.2d 684, 688 (1995).

by refusing to grant a new trial. *See id.*; *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003) (reviewing a district court's denial of a motion for new trial based on juror misconduct for an abuse of discretion).

*Goode's convictions and sentence do not violate double jeopardy*

Finally, Goode argues that sentencing him for attempted murder and aggravated battery violated the Double Jeopardy Clause. "The Double Jeopardy Clause protects against . . . multiple punishments for the same offense." *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1278 (2012). This court reviews a claim that a conviction violates double jeopardy de novo. *Id.* at ___, 291 P.3d at 1277. If "a state legislature has clearly authorized multiple punishments for the same offense[,] . . . dual punishments do not offend double jeopardy." *Id.* at ___, 291 P.3d at 1278.

Under Nevada law, "[n]othing . . . protects a person who, in an unsuccessful attempt to commit one crime, does commit another and different one, from the punishment prescribed for the crime actually committed." NRS 193.330(2). Therefore, we concluded in *Jackson* that the Legislature clearly authorized multiple punishments for both attempted murder and aggravated battery, even if the charges are based on the same conduct. 128 Nev. at ___, 291 P.3d at 1279-80. We further concluded that these crimes were not lesser included offenses of each other. *Id.* at ___, 291 P.3d at 1280 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Therefore, we conclude that Goode's convictions and sentences do not violate the Double Jeopardy Clause. *Id.* at ___, 291 P.3d at 1279-80.[5]

---

[5]In addition, Goode argues that cumulative error warrants reversal. However, we conclude that Goode's assertions of error lack merit. *continued on next page...*

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____ *Pickering* , J.
Pickering

_____ , J.
Parraguirre

cc:  Hon. Valorie J. Vega, District Judge
     Law Office of Scott P. Eichhorn, LLC
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

---

...*continued*

Therefore, his cumulative error argument also fails. *See Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007).

SAITTA, J., concurring:

Though I concur with the majority in affirming Goode's conviction, I write separately to comment on the issue of NRS 193.168(8)'s gang enhancement provision.

NRS 193.168(8)(c) requires the State to prove, inter alia, that the gang at issue "[h]as as one of its common activities engaging in criminal activity punishable as a felony, other than the conduct which constitutes the primary offense." The majority correctly observes that NRS 193.168(8)(c) uses the term "punishable" as opposed to "punished" and that NRS 193.168(7) allows the State to prove the gang enhancement using expert testimony. Since a statute's plain meaning controls its interpretation, *State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011), I must agree with the majority's conclusion that the Legislature intended to allow the State to offer evidence other than prior convictions to prove the gang enhancement.

The majority concludes that juvenile adjudications are admissible to prove a gang sentencing enhancement because no statute expressly prohibits their use for this purpose. However, a cornerstone of juvenile justice law is that juvenile adjudications are civil and "not criminal in nature." NRS 62D.010(1)(a); *see also State v Javier C.*, 128 Nev. ___, ___, 289 P.3d 1194, 1197 (2012). Thus, the majority allows the admission of the juvenile records of other purported gang members to prove the gang sentencing enhancement for the present defendant.

This analysis is troubling because juvenile adjudications typically use less formal processes and fewer procedural safeguards than are present in criminal trials. *See* NRS 62D.010(1). Consequently, the use of juvenile adjudications to provide evidence in a criminal trial—as was

done here—can allow the admission of evidence that has not been subject to the procedural standards required in a criminal trial.

Furthermore, the admission of other individuals' unrelated juvenile adjudications is troubling because it allows a defendant's wrongdoing to be judged by misconduct that is not connected to the charged crime and in which the defendant was not involved. I can identify no other area of criminal law that allows the use of other individuals' unrelated conduct to increase a defendant's punishment. Though the present record does not suggest, and Goode does not argue, that the juvenile adjudication records at issue here had been sealed and therefore excluded under NRS 62H.130, this does not alleviate my concerns about using others' unrelated crimes activity against a criminal defendant.

Finally, I write separately to express my concern about NRS 193.168(8)(c)'s lack of standards to assist our courts in determining what evidence can be admitted to prove the felonious activity element. While the majority recognizes that the statute contains few, if any, meaningful standards, it nonetheless concludes that this is evidence of the Legislature's unambiguously expressed intent not to restrict the type of evidence that could be considered for a gang sentencing enhancement. While this conclusion may be correct in light of the statute's plain meaning, *see Lucero*, 127 Nev. at ___, 249 P.3d at 1228, it leaves the district courts in an unenviable position of making decisions that lack any type of direction or standard. As a result, this statute promotes inconsistent and unpredictable applications.

Although I write separately to express my concerns about this standardless statute and the troubling use of other gang members' conduct to prove that a defendant was a member of a gang, I join my colleagues in

their disposition of this matter because their ultimate conclusions about the application of NRS 193.168(8)(c) and the other issues presented in the present case are correct.

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A